**Kirk HUFFMAN, Plaintiff–Appellant,**

v.

**Gene HAINS, Defendant–Appellee.**

No. 87–2919.

United States Court of Appeals,
Seventh Circuit.

Argued April 19, 1988.

Decided Jan. 25, 1989.

Ernest Newborn, Cohen & Malad, Indianapolis, Ind., for plaintiff-appellant.

Leon R. Kaminski, Newby Lewis Kaminski & Jones, LaPorte, Ind., for defendant-appellee.

Before FLAUM and MANION, Circuit Judges, and WILL, Senior District Judge *.

MANION, Circuit Judge.

Kirk Huffman owned stock in the Vidette–Messenger Company ("Vidette"), an Indiana corporation that published a newspaper in Valparaiso, Indiana. In January, 1985, Huffman decided to sell his Vidette stock to his mother. In anticipation of the sale, Huffman hired Gene Hains, a certified public accountant, to appraise the stock.

Hains determined that the Vidette stock was worth $3,900 per share. Based in part upon Hains' appraisal, and in part upon a lower appraisal his mother had provided, Huffman agreed to sell his stock to his mother for $2,750 per share. Five months later, Huffman's mother sold all her Vidette stock to Thomson Newspapers, Inc., for $14,300 per share. According to Huffman, his mother and other Vidette directors had been negotiating the Thomson deal, unbeknownst to Huffman, before he sold his stock to his mother.

Understandably irritated that he was unable to share in the Thomson bonanza, Huffman filed this suit in January, 1986. In his original complaint, Huffman alleged that various defendants, including his mother and Hains, had violated section 10(b) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b–5. Huffman also brought various counts against the defendants based on state-law theories, including a count against Hains for malpractice.[1]

Since diversity did not exist between Huffman and Hains (both were residents of Indiana), Huffman invoked the district court's pendent jurisdiction in bringing his malpractice claim against Hains. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 721–29, 86 S.Ct. 1130, 1136–41, 16 L.Ed.2d 218 (1966).

In August, 1986, Huffman dismissed all his claims against Hains except the malpractice claim. Eight months later, in April, 1987, Hains filed a motion to dismiss the malpractice claim. In the motion, Hains asserted that since Huffman had dismissed his federal claims against Hains, it was proper for the district court, pursuant to *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139, to relinquish jurisdiction over the malpractice claim.

By the time that Hains had filed his motion to dismiss, the statute of limitations had run on the malpractice claim. Huffman filed a response to Hains' motion to dismiss. In that response, however, Huffman did not argue that the statute of limitations might bar the malpractice claim in state court.

While Hains' motion to dismiss was pending, Huffman and the other defendants settled their disputes. Pursuant to the settlement, the district court dismissed these other defendants in July, 1987. Thus, by the time the district court decided Hains' motion to dismiss, the only claim left in the case was the malpractice claim against Hains, which the district court dismissed.[2] Huffman asked the district court to reconsider its decision, arguing for the first time that the statute of limitations might bar his malpractice claim against Hains in the state court. The district court refused to reinstate the claim. Huffman appeals.

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. Huffman also sued three other defendants for an injunction barring them from releasing any funds from the sale of the Vidette stock.

2. Because of an oversight, Huffman did not finally dismiss with prejudice the three defendants against whom he had sought an injunction (see note 1, *supra*) until after the district court had dismissed the malpractice claim. However, the claims against those three defendants depended on the federal claims against the other defendants; if Huffman lost the federal claims against the other defendants, he lost his claim for an injunction. Thus, by dismissing the other federal defendants with prejudice, Huffman effectively dismissed his claim for an injunction.

Hains contends that since Huffman dismissed his federal claims against him, the district court would have had to exercise pendent party jurisdiction (as opposed to pendent claim jurisdiction) over the malpractice claim. Although his brief is not clear on this point, Hains seems to argue that this circuit has rejected the concept of pendent party jurisdiction.

Pendent claim jurisdiction arises when a plaintiff brings both federal and related state claims against the same defendant in federal court, and no independent basis of federal jurisdiction (for example, diverse citizenship) exists regarding the state claim. This is the type of jurisdiction involved in *Gibbs, supra*. There is little, if any, debate over the federal courts' power to exercise pendent claim jurisdiction, provided that the federal claims are not frivolous on their face, "[t]he state and federal claims ... derive from a common nucleus of operative fact," and the federal and state claims "are such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding...." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138.

On the other hand, pendent *party* jurisdiction arises when a plaintiff brings a federal claim in federal court against one party, and brings a related state-law claim against *another* party without an independent basis of federal jurisdiction. Unlike pendent claim jurisdiction, there is still some debate over whether the federal courts have the power to exercise pendent party jurisdiction. In the two cases in which it faced the question, the Supreme Court decided the jurisdictional issue on narrower grounds, and refused to explicitly state whether Article III grants such power. *See Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) (holding that the specific jurisdictional statute involved did not allow pendent party jurisdiction in that case); *Moor v. County of Almeda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) (holding that even if the federal courts have the power to exercise pendent party jurisdiction, the district court did not abuse its discretion in refusing to exercise it). While most circuits have accepted pendent party jurisdiction in general, the Ninth Circuit has rejected it. *See Carpenters Southern California Admin. Corp. v. D & L Camp Constr. Co.*, 738 F.2d 999, 1000 (9th Cir.1984) (collecting other Ninth Circuit cases); *Ayala v. United States*, 550 F.2d 1196, 1200–01 n. 8 (9th Cir.1977) (acknowledging the split between the Ninth Circuit and other circuits).

Although this circuit has called pendent party jurisdiction an "embattled" concept, *Citizens Marine Natl. Bank v. United States Dept. of Commerce*, 854 F.2d 223, 226 (7th Cir.1988), *petition for cert. filed*, 57 U.S.L.W. 2423 (U.S. Dec. 7, 1988) (No. 88–940); *Bernstein v. Lind–Waldock & Co.*, 738 F.2d 179, 187 (7th Cir.1984), we have allowed district courts to exercise pendent party jurisdiction in certain circumstances. *See Vantine v. Elkhart Brass Mfg. Co.*, 762 F.2d 511, 518–19 (7th Cir. 1985); *Moore v. Marketplace Restaurants, Inc.*, 754 F.2d 1336, 1359–61 (7th Cir.1985) (separate opinions of Judge Posner and Senior Judge Gibson expressing the panel majority's view on the issue); *see also Zabkowicz v. West Bend Co.*, 789 F.2d 540, 545–58 (7th Cir.1986) (holding that while Article III permits pendent party jurisdiction, the court's decision not to exercise it in that case was not an abuse of discretion). Our cases have set forth a two-step analysis to determine whether pendent party jurisdiction exists in a particular case. First, the court must examine whether the constitutional power to exercise such jurisdiction exists. Second, the court must examine whether Congress has limited the court's power to exercise pendent party jurisdiction in the specific statutory provision conferring federal jurisdiction in that case. *Zabkowicz*, 789 F.2d at 546. The constitutional power to exercise pendent party jurisdiction exists if the federal claim is not frivolous, the federal and state claims " 'derive from a common nucleus of operative fact,' " and the federal and state claims are the kind that the plaintiff " 'would ordinarily be expected to try ... in one judicial proceeding.' " *Id.* (quoting *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138). The statutory power to exercise pendent-party jurisdiction depends upon whether

"Congress in the [particular statutory grant at issue] has ... expressly or by implication negated" pendent party jurisdiction. *See Aldinger*, 427 U.S. at 18, 96 S.Ct. at 2422; *Zabkowicz*, 789 F.2d at 546.

Whether pendent party jurisdiction exists in a particular case and, indeed, whether pendent party jurisdiction in general is constitutionally permissible, are "subtle and complex" questions. *Aldinger*, 427 U.S. at 2, 96 S.Ct. at 2415; *Moor*, 411 U.S. at 715, 93 S.Ct. at 1799. But even where the power exists to hear a pendent state-law claim, the decision whether to exercise that power rests in the district court's discretion; this is true whether the district court is exercising pendent claim or pendent party jurisdiction. *See Gibbs*, 383 U.S. at 726–29, 86 S.Ct. at 1139–41 (pendent claim); *Moor*, 411 U.S. at 712–17, 93 S.Ct. at 1797–18 (pendent party). Moreover, the same factors are relevant in determining whether to exercise pendent claim jurisdiction or pendent party jurisdiction. *See Moor*, 411 U.S. at 712, 715–16, 93 S.Ct. at 1798–99 (citing *Gibbs*); *see also* 13B C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* § 3567.2, at 160 (2d ed. 1984). Because we find that the district court did not abuse its discretion in dismissing the malpractice claim, we need not resolve the "subtle and complex" questions surrounding pendent party jurisdiction in this case.

By the time the district court decided Hains' motion to dismiss, all of Huffman's federal claims—against Hains and against the other defendants—had dropped from the case. *Gibbs* set forth the general principle that a federal court need not "tolerate a litigant's effort to impose upon it what is in effect only a state law case"; therefore, if the federal claims drop from the case before trial, the district court should dismiss the state-law claims as well. *Gibbs*, 383 U.S. at 727–28, 86 S.Ct. at 1140. This case falls under that general principle.

Hains, however, protests that the district court abused its discretion in dismissing his malpractice claim because considerations of judicial economy favored retaining jurisdiction over the claim. According to Huffman, the district judge was familiar with both the facts and law in this case; forcing Huffman to bring his claim in state court would require the parties to educate a new judge. Huffman further notes that the parties have undertaken extensive discovery, and that duplicating that discovery would be burdensome and expensive (though he cites no authority for his claim that the parties would have to duplicate the discovery). In a related vein, Huffman asserts that his mother, whom he claims would have been a key witness, is now dead, and he may not be able to introduce her deposition testimony in state court (again, though, citing no authority for this proposition).

It is true that the general rule *Gibbs* enunciated is not absolute, and that the district court's discretion over pendent state-law claims includes the discretion to exercise pendent jurisdiction in appropriate cases. *Graf v. Elgin, Joliet and Eastern Ry. Co.*, 790 F.2d 1341, 1347 (7th Cir.1986). But we have described the district court's discretion to *relinquish* pendent jurisdiction as "almost unreviewable." *Id.* This is especially so when all federal claims have dropped from the case before trial, leaving only state-law claims to decide. At that point, respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns. *Graf* indicates that in appropriate circumstances, a district court may exercise its discretion to retain jurisdiction over a pendent claim. But the considerations that Huffman has raised are not sufficient to make us second-guess the district court's decision to relinquish jurisdiction.

Huffman also argues that the district court abused its discretion by dismissing his malpractice claim because the statute of limitations had run in February, 1987. The running of the statute of limitations could take this case outside *Gibbs'* general rule. *See Duckworth v. Franzen*, 780 F.2d 645, 656–57 (7th Cir.1985); *O'Brien v. Continental Illinois Nat'l Bank & Trust Co.*, 593 F.2d 54, 63–65 (7th Cir.1979). But the statute of limitations should not be a concern in this case because Indiana has a savings statute. That statute provides:

If, after the commencement of an action, the plaintiff fails therein, from any cause except negligence in the prosecution ... a new action may be brought within five (5) years after such determination....

Ind.Code Ann. § 34–1–2–8 (West 1983). The savings statute applies in a case such as this one where a federal court dismisses a state-law claim for lack of subject matter jurisdiction. *Eves v. Ford Motor Co.,* 152 Ind.App. 34, 281 N.E.2d 826 (1972).

Huffman posits several arguments for why the savings statute might not apply in this case; all those arguments, however, are quite weak. It is true, as Huffman notes, that the savings statute does not apply when a plaintiff voluntarily dismisses a claim. *Kohlman v. Finkelstein,* 509 N.E.2d 228 (Ind.App.1987). Huffman speculates that a state court might consider his voluntary dismissal of his federal claims as a voluntary dismissal of the malpractice claim. But Huffman did not voluntarily dismiss the malpractice claim. The district court, in its discretion, dismissed that claim, and Huffman vigorously contests that decision. Thus, the malpractice claim "fail[ed]," and the savings statute should apply. Huffman offers no authority for his contrary argument, and it is hard to imagine that the state court would so contort the meaning of "voluntary" to hold that Huffman voluntarily dismissed his malpractice claim.

Huffman also suggests that because he failed to timely raise the statute of limitations argument in the district court and because he dismissed his federal claims without considering the ramifications on the pendent malpractice claim, a state court may find that the malpractice claim failed because of his own negligence. But the timeliness of Huffman's statute of limitations argument in the district court is not a factor in our decision. And Indiana case law indicates that Indiana's courts would apply the savings statute here. In *Torres v. Parkview Foods,* 468 N.E.2d 580 (Ind. App.1984), an Indiana resident sued two defendants in federal court one day before the statute of limitations ran out. Unfortunately for the plaintiff, one of the defendants was also an Indiana resident, so com-

plete diversity did not exist. The defendants filed motions to dismiss. Before the district court dismissed the case, the plaintiff sued the same defendants in state court. The defendants moved to dismiss that suit because the statute of limitations had run. The trial court dismissed the suit; the court of appeals reversed.

Although the court of appeals' decision rested on tolling grounds rather than on the savings statute (which did not apply because the plaintiff sued in state court before the federal court dismissed his suit), the court drew guidance from the savings statute. The court noted that if the savings statute applied, it would have saved the plaintiff's state court suit. *Id.* at 583. The court also, in effect, indicated that bringing a non-diverse state action in federal court would not be "negligence" under the savings statute. *See id.* Huffman's dismissing his federal claims in federal court is no more "negligent" than bringing a state-law claim against non-diverse parties in federal court, especially since Huffman had a reasonable (although ultimately losing) argument for the district court retaining jurisdiction over his malpractice claim. Judging from *Torres,* it is highly unlikely that an Indiana court would find Huffman negligent and refuse to apply the savings statute.

Huffman's arguments for why the savings statute might not apply also run counter to the liberal construction the Indiana courts have given the savings statute. In *Torres,* the court of appeals stated that

"[t]he statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. *The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his right before the courts.*"

*Id.* (quoting *Gaines v. City of New York,* 215 N.Y. 533, 109 N.E. 594, 596 (1915) (Cardozo, J.)) (emphasis added by the Indiana court); *see also Eves,* 281 N.E.2d

at 830. As in *Torres*, by timely filing his suit in federal court, Huffman gave Hains "timely notice of a present purpose to maintain his right before the courts."

Still, although all indications are that the savings statute will apply here, it is impossible to predict with absolute certainty what the Indiana courts will do with Huffman's malpractice claim. Huffman asserts that if any possibility exists that the statute of limitations might bar the state-law claim, the district court must retain jurisdiction over that claim unless the defendant agrees not to raise the statute of limitations in the state court (an agreement Hains has refused to make). But the cases Hains cites for this proposition, *Duckworth v. Franzen*, 780 F.2d 645 (7th Cir.1985) and *O'Brien v. Continental Illinois Nat'l Bank and Trust Co.*, 593 F.2d 54 (7th Cir.1979), involved circumstances casting serious doubt upon whether a state savings statute would save the plaintiff's state-law claim.

In *Duckworth*, a question existed as to whether the savings statute, which became effective after the plaintiff brought his suit, would apply retroactively. 780 F.2d at 657. Also, the Illinois Supreme Court had held that the savings period in a materially identical predecessor statute began to run when the case was dismissed, not when the dismissal was affirmed. If that decision applied to the new statute—and this court cited no reason why it would not—the savings period would have run out on the plaintiff's claim. *Id.* Therefore, we remanded the state-law claim to the district court and ordered the court to retain jurisdiction unless the defendants agreed to waive their statute of limitations defense. *Id.*

In *O'Brien*, the relevant savings statute appeared, on its face, not to apply to involuntary dismissals. The court found no cases interpreting the savings statute. 593 F.2d at 64. Thus, it appeared "likely if not certain" that the plaintiff's state-law claims would be time-barred in state court. *Id.* at 65. Therefore, we reversed the district court's dismissal of the state-law claims. *Id.*

At most, *Duckworth* and *O'Brien* stand for the proposition that where serious doubts exist about whether the plaintiff may bring his state-law claims in state court, the district court should retain pendent jurisdiction over those claims after dismissing the federal claims. Our case, however, presents almost exactly the opposite situation. Huffman has cited nothing that indicates that the Indiana savings statute would not apply in this case; as we have seen, Indiana case law indicates that the savings statute will apply. Huffman's unsubstantiated speculation that his malpractice claim might be time-barred in state court is not sufficient to persuade us that the district court abused its discretion in dismissing that claim. Therefore, we affirm the district court's decision.

AFFIRMED.