**MECHANICAL RUBBER & SUPPLY COMPANY, Plaintiff,**

v.

**AMERICAN SAW AND MANUFACTURING COMPANY, and Hagerty Brothers Company, Defendant.**

No. 89–1120.

United States District Court,
C.D. Illinois.

Sept. 26, 1990.

Phillip B. Lenzini, Peoria, Ill., for plaintiff.

Ronald L. Hamm, Peoria, Ill., and Michael T. Reid, Chicago, Ill., for defendant American Saw.

Franklin L. Renner, Peoria, Ill., for defendant Hagerty Bros.

## ORDER

MIHM, District Judge.

Before the Court is a Motion by the Plaintiff Mechanical Rubber to remand (# 22) this case to state court. Also before the Court is the issue of whether or not this Court has pendent party jurisdiction over Hagerty Brothers Company. These issues have been fully briefed. The Court denies the Plaintiff's Motion to Remand (# 22). And, the Court finds it lacks subject matter jurisdiction over Hagerty Brothers.

## BACKGROUND

Mechanical Rubber filed an Amended Complaint on December 20, 1989. Count I of the Amended Complaint alleges antitrust violations under Illinois law against American Saw. *See*, Ill.Rev.Stat. ch. 38, § 60–3(4). This statute prohibits contracting to sell goods on the condition that the lessee or purchaser will not deal in the goods of the competitors where the effect of the condition is to substantially lessen competition or tend to create a monopoly in any line of commerce. The Amended Complaint alleges that American Saw sold goods to the Plaintiff on the condition that Plaintiff not deal in the goods of competitors of American Saw. Also, it is alleged that the effect of the condition will be to substantially lessen competition or to tend to create a monopoly. The Plaintiff seeks treble damages, injunctive relief, and an award of attorney's fees in Count I.

Counts II through VII of the Plaintiff's Amended Complaint allege various state causes of action against American Saw and Hagerty Brothers.

## DISCUSSION

American Saw removed this case to federal court pursuant to 28 U.S.C. § 1441(a) and (c). Under 28 U.S.C. § 1441(a), American Saw asserted that this case was removable because this Court would have original jurisdiction over the state antitrust claim, which is actually a federal antitrust claim disguised as a state antitrust claim. Also, American Saw contends that removal is proper pursuant to 28 U.S.C. § 1441(c) because the claims against American Saw, particularly the antitrust claim, are separate and independent claims which would be removable if sued upon alone because diversity exists between American Saw and Mechanical Rubber (*see also*, 28 U.S.C. § 1332).

I. *Was Removal Proper Under 28 U.S.C. § 1441(a)?*

American Saw argues that this Court has original jurisdiction over the Amended

Complaint because it states a cause of action under the federal antitrust laws, although the Complaint, through artful pleading, attempts to state a claim under the state antitrust laws.

Mechanical Rubber maintains that a Plaintiff is the master of his complaint and that he can defeat removal to the federal courts by ignoring his federal claims and pursuing only the state claims in state court. *See, People of the State of Illinois v. Kerr–McGee Chemical Corp.*, 677 F.2d 571 (7th Cir.1982); *Jones v. General Tire and Rubber Company*, 541 F.2d 660 (7th Cir.1976); *Nuclear Engineering Company v. Scott*, 660 F.2d 241 (7th Cir.1981); and *California v. ARC American Corp.*, 490 U.S. 93, 109 S.Ct. 1661, 1665–1667, 104 L.Ed.2d 86 (1989).

In response, American Saw quotes the following:

A qualification of this so-called "well-pleaded complaint" rule for determining jurisdiction is that a plaintiff may not deny a defendant his right to a federal forum by artfully disguising an essentially federal law claim in terms of state law.

*Nuclear Engineering Company*, 660 F.2d at 249; *see also, Kerr–McGee*, 677 F.2d at 575; *General Tire and Rubber Company*, 541 F.2d at 664; and *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981).

In *Federated Department Stores*, the United States brought an antitrust action against the defendant department stores alleging a violation of the Sherman Act by agreeing to fix the retail price of women's clothing sold in Northern California. Seven parallel civil suits were subsequently filed by private plaintiffs which were consolidated. The district court dismissed the complaints on the ground that the plaintiffs had not alleged an antitrust injury.

The plaintiffs in five of the suits appealed the dismissal to the Ninth Circuit. Moitie and Brown, however, chose not to appeal and instead filed two actions in state court. Although the complaints purported to raise only state antitrust claims, they made allegations similar to those made in the prior complaint. The defendants removed the state actions to federal court. The district court denied the plaintiffs' motions to remand, holding that the complaint, artfully couched in terms of state antitrust law, was in many respects identical with the prior complaints and that the action was properly removed to federal court because the complaint raised essentially federal antitrust claims. (Unpublished district court opinion). The district court further dismissed the complaints on the basis of *res judicata.*

The Ninth Circuit affirmed the district court on the issue of removal but reversed on the issue of *res judicata. Moitie v. Federated Department Stores, Inc.*, 611 F.2d 1267 (9th Cir.1980).

The Supreme Court reversed the Ninth Circuit on the *res judicata* issue. And, as to the issue of removal, the Supreme Court stated:

The Court of Appeals also affirmed the district court's conclusion that Brown II was properly removed to federal court, reasoning that the claims presented were federal in nature. We agree that at least some of the claims had a sufficient federal character to support removal. *As one treatise puts it, courts will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum ... [and] occasionally, the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization.* 14 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure*, § 3722, pp. 564–566 (1976) (citing cases) (footnote omitted). The district court applied the subtle principle to the facts of this case. After an extensive review and analysis of the origins and substance of the two *Brown* complaints, *it found, and the Court of Appeals expressly agreed, the respondents had attempted to avoid removal jurisdiction by "artful[ly]" casting their "essentially federal law claims" as state-law claims.* We will not question here that fact finding. *See, Prospect Dairy, Inc.*

*v. Dellwood Dairy Company,* 237 F.Supp. 176 (N.D.N.Y.1964); *In re Wiring Device Antitrust Litigation,* 498 F.Supp. 79 (E.D.N.Y.1980); *Three J Farms, Inc. v. Alton Box Board Company,* 1979–1 Trade Cases ¶ 62,423 (S.C. 1978), reversed on other grounds, 609 F.2d 112 (CA 4 1979), *cert. denied,* 445 U.S. 911 [100 S.Ct. 1090, 63 L.Ed.2d 327] (1980).

*Federated Department Stores,* 452 U.S. at 397 n. 2, 101 S.Ct. at 2427 n. 2.

Exactly what the Supreme Court was affirming is unclear because the district court opinion is unpublished and the Ninth Circuit opinion summarily affirms that portion of the district court opinion regarding the removal of the antitrust claims. However, American Saw quotes extensively from the three lower court opinions which the Supreme Court cited in its explanatory footnote.

Particularly relevant is a quotation from *In re Wiring Device Antitrust Litigation,* 498 F.Supp. 79 (E.D.N.Y.1980). The court stated:

> A federal court need not blind itself to the real gravamen of a claim because plaintiff tenders a blindfold in the form of artificial characterizations in its complaint. Peeking to determine reality is particularly appropriate *where it is apparent that the central federal claim is inseparable from the state law theory, and where the question of federal jurisdiction turns on the out-of-state status of the parties and the interstate nature of the transactions complained of.* (Citations omitted). Where, as here all defendants are unquestionably engaged in interstate commerce, those who are damaged from an alleged restraint of trade find a remedy in the federal, not the state, antitrust laws. This conclusion is buttressed in this case by the longstanding holding of the South Carolina Supreme Court, described in more detail below, that the state antitrust statute under which the plaintiffs have attempted to bring their action applies only to intrastate commerce and does not reach interstate commerce of any kind. (Citation omitted).

*Id.* at 82 (emphasis added); *see also, T.O.C. v. United Artists Theater Circuit,* 631 F.Supp. 832, 834 (N.D.Cal.1986).

Count I of the Amended Complaint alleges that American Saw is a manufacturer of industrial saw blades with its principal place of business in Massachusetts. (Amended Complaint at ¶ 3). It also alleges that American Saw sells its nationally known Lenox saw blades to industrial distributors in Illinois and elsewhere for resale to industrial and commercial users. (*Id.*).

The antitrust violation alleged is that American Saw sold its saw blades to Plaintiff on the condition that it not deal in the goods of Defendant's competitors, the effect of which may be substantially lessened competition or tend to create a monopoly. It alleges that American Saw has engaged in a practice of terminating other Lenox dealers who begin dealing in competing lines and reinstating such dealers only if the competing lines were dropped. (*Id.* at ¶ 8).

It is undisputed that American Saw's products (saw blades) purchased by Mechanical Rubber were manufactured in Massachusetts and shipped in interstate commerce to the Plaintiff's principal place of business in Peoria, Illinois. Orders for the products were sent by Mechanical Rubber from Illinois to Massachusetts. Payments were made via interstate commerce also.

■ American Saw asserts that the specific antitrust wrong alleged consists of sales in interstate commerce on the condition that Plaintiff not deal in the goods of competitors of American Saw. As American Saw notes, the state antitrust law alleged to have been violated, Ill.Rev.Stat. ch. 38, § 60–3(4), is substantially identical in terms to § 3 of the Clayton Act, 15 U.S.C. § 14. Under the Clayton Act, insofar as the interstate commerce element is concerned, the Complaint can rest on the theory that the acts complained of occurred within the flow of commerce, or that the acts complained of occurred wholly on a state or local level in interstate commerce,

but substantially affected interstate commerce, or on both theories. *Kallen v. Nexus Corp.*, 353 F.Supp. 33 (N.D.Ill.1973).

■■■ Thus, American Saw asserts that because of *its out-of-state status and the interstate nature of the transactions complained of,* Mechanical Rubber has alleged a federal antitrust violation and not a state antitrust violation. American Saw concedes it is clear after *California v. ARC America Corp.*, 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989) that federal antitrust law is not intended in any direct way to preempt state antitrust law except where there might be a direct conflict between the two laws. However, it maintains that its position is not that federal antitrust laws preempt the state antitrust laws, but that the federal antitrust laws apply to acts affecting or occurring in the flow of commerce and that the Illinois antitrust laws apply to acts affecting intrastate commerce.

This Court agrees with the Defendant American Saw. Count I is sufficiently federal in character that the Court has subject matter jurisdiction over American Saw and the Plaintiff must properly bring this count under the federal antitrust laws. And, although neither of the parties have cited any law on this point and the Court has found no law on this point, this Court believes that Illinois courts would not extend the application of its antitrust law so that it would burden interstate commerce.

The Plaintiff's Complaint alleges in relevant part:

3. At all times mentioned herein, the Defendant American Saw and Manufacturing Company (hereafter "American Saw"), was engaged in the business of manufacturing and producing and distributing to industrial distributors in the central region of the State of Illinois *and elsewhere the nationally known brand and product line of high quality industrial saw blades commonly known as "Lenox",* with its principal place of business in East Long Meadow, Massachusetts.

8. For the purpose of forming and effectuating monopoly power, the Defendant American Saw *has engaged and does engage in a pattern with various Lenox dealers whereby* the distributorships of those dealers who either began offering competing product lines or contemplated offering competing product lines were revoked by the Defendant American Saw and such dealerships were reinstated only if the competing line was terminated or abandoned.

(Plaintiff's Amended Complaint at ¶¶ 3 and 8) (emphasis added).

Paragraph 3 makes it clear that the Defendant American Saw is an out-of-state party who does business nationally in a product line known as Lenox. Further, it is undisputed that the sales, orders, and shipping of American Saw's products were made in interstate commerce. And, from both paragraphs 3 and 8 of the Complaint, it is apparent that the Plaintiff is alleging that American Saw is engaging in a pattern of terminating distributorships on a national level of those dealers who either begin offering competing product lines or who are contemplating offering competing product lines. Thus, this Court finds that the Plaintiff has attempted to avoid removal jurisdiction by artfully casting an essentially federal law claim as a state law claim.

However, as the Defendant American Saw concedes, Count I of the Amended Complaint also states a cause of action in intrastate commerce which may be a cognizable claim under Ill.Rev.Stat. ch. 38, ¶¶ 60-1 to 60-11. Thus, Count I properly alleges claims under state and federal law.

Because the Court has found that this case was removable under 28 U.S.C. § 1441(a) as this Court would have had original jurisdiction over the antitrust claim if it had originally been brought in federal court, it is unnecessary for this Court to consider whether or not the antitrust claim is a separate and independent claim which would be removable on the basis of diversity if sued upon alone under 28 U.S.C. § 1441(c).

II. *Does this Court Have Jurisdiction Over Hagerty Brothers Company?*

The question in this case is whether the Court has pendent party jurisdiction over

the state law claims against Hagerty Brothers Company. A two-part test must be satisfied before a district court can exercise pendent party jurisdiction. *Huffman v. Hains*, 865 F.2d 920, 922 (7th Cir.1989). In describing the factors which bear on the Court's decision to exercise its pendent party jurisdiction, the Seventh Circuit stated in *Huffman:*

> First, the court must examine whether the constitutional power to exercise such jurisdiction exists. Second, the court must examine whether Congress has limited the court's power to exercise pendent party jurisdiction in the specific statutory provision confronting federal jurisdiction in that case. (Citation omitted). The constitutional power to exercise pendent party jurisdiction exists if the federal claim is not frivolous, the federal and state claims "derive from a common nucleus of operative fact," and the federal and state claims are the kind that the plaintiff "would ordinarily be expected to try ... in one judicial proceeding." (Citations omitted). The statutory power to exercise pendent party jurisdiction depends upon whether "Congress in the [particular statutory grant at issue] has ... expressly or by implication negated" pendent party jurisdiction. (Citations omitted).

*Id.* at 922–923.

■ The federal claim is clearly not a frivolous claim as the Court's earlier discussion indicates. Further, both the federal and state claims in this case derive from a common nucleus of operative facts and are claims that a plaintiff would ordinarily be expected to try in one judicial proceeding. Thus, this Court has the constitutional power to exercise jurisdiction over these state claims.

However, the second factor in the *Huffman* test regarding whether or not the Court has the statutory power to exercise jurisdiction has been modified by a subsequent Supreme Court decision. *See, Finley v. United States,* —— U.S. ——, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). In *Finley,* the plaintiff had sued the United States in federal court under the Federal Tort Claims Act for wrongful death. Later, the plaintiff moved to amend her complaint to add state tort law claims against the city and an electric company, claiming that their negligence had caused the death. No independent basis for federal jurisdiction against the city or the electric company existed. The district court allowed the joinder of the additional defendants as pendent parties. The Ninth Circuit reversed, holding that the Tort Claims Act does not permit pendent jurisdiction over additional parties.

In affirming the Ninth Circuit, the Supreme Court distinguished between pendent claim jurisdiction and pendent party jurisdiction. The Court acknowledged that *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) held that pendent claim jurisdiction over non-federal claims may exist where parties are litigating other matters properly before the federal court. However, the Court reasoned that pendent party jurisdiction is analytically and fundamentally different from pendent claim jurisdiction in stating:

> We may assume, without deciding, that constitutional criterion for pendent-party jurisdiction is analogous to the constitutional criterion for pendent-claim jurisdiction, and that petitioner's state-law claims pass that test. *Our cases show, however, that with respect to the addition of parties, as opposed to the addition of only claims, we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdiction statutes broadly.*

*Id.* 109 S.Ct. at 2006–2007 (emphasis added). The *Finley* Court then went on to quote from its decision in *Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976) the following:

> "[T]he addition of a completely new party," we said, "would run counter to the well-established principle that federal courts ... are courts of limited jurisdiction marked out by Congress." (Citation omitted). "Resolution of a claim of pendent-party jurisdiction ... calls for care-

ful attention to the relevant statutory language." (Citation omitted). *Finley*, 109 S.Ct. at 2007.

Thus, it would appear that the question to be considered is whether or not the statutory language of the statute in question allows pendent party jurisdiction. The existence of this issue is supported by the fact that the *Finley* court noted that mere factual similarity between the state and federal claims is of no consequence to determine the propriety of pendent party jurisdiction because neither the convenience of the litigants nor considerations of judicial economy are sufficient to justify the extension of the ancillary jurisdiction. *Id.* at 2008. The *Finley* Court's analysis then focused on the actual language of the Federal Tort Claims Act to determine whether the text of the jurisdictional statute in any way authorized the inclusion of private defendants. *Id.* at 2008–2010. After concluding that the statutory language did not extend to parties other than the United States, the Court found that pendent party jurisdiction was not available under the Tort Claims Act. *Id.* at 2010.

After *Finley*, federal courts have generally interpreted *Finley* to preclude pendent party jurisdiction unless there exists an independent jurisdictional basis for the pendent party. *Lather v. Beadle County*, 879 F.2d 365, 367–368 (8th Cir.1989); *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1407–1409 (9th Cir.1990); *Ezell v. Burlington Northern Railroad Company*, 724 F.Supp. 863, 864–865 (D.Wyo.1989). In fact, one federal court in a footnote went so far as to say that "pendent-party jurisdiction apparently is no longer a viable concept." *Staffer v. Bouchard Transportation Company*, 878 F.2d 638, 643, n. 5 (2nd Cir.1989). In addition, one prominent commentator stated:

> It is possible to read *Finley* as only a construction of the Federal Tort Claims Act. Much of the opinion is devoted to an examination of that statute. So read the opinion would be fairly narrow, although it still would be contrary to the strong indication in *Aldinger* that pendent-party jurisdiction would be proper where, as in *FTCA*, federal jurisdiction is

exclusive and a refusal to allow pendent-party jurisdiction would require separate suits in state and federal court.

It seems clear, however, that this reading of *Finley* would be too narrow. A fair reading is that the court is distinguishing sharply between pendent claims and pendent parties. Although the *Finley* court assumes, without deciding, that pendent-party jurisdiction would be within the constitutional grant of judicial power, *it holds that "an affirmative grant of pendent-party jurisdiction" must be found in a statute. "[A] grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties."* There may be statutes that affirmatively grant pendent-party jurisdiction, but they surely must be exceptional. It is not surprising that lower courts are reading *Finley* as putting an end to that jurisdiction. Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction 2d, § 3567.2 (emphasis added).

Several district court cases subsequent to the *Finley* decision have allowed claims against pendent parties. *See, Armstrong v. Edelson*, 718 F.Supp. 1372, 1376–1377 (N.D.Ill.1989); *Carter v. Dixon*, 727 F.Supp. 478, 479–480 (N.D.Ill.1990); *Bailey v. City of Chicago*, No. 89–1021, slip op., 1990 WL 104048 (N.D.Ill., June 28, 1990); *Craig v. First American Capital Resources, Inc.*, 740 F.Supp. 530 (N.D.Ill. 1990).

However, the above cases apply the second part of the *Huffman* test as if the Supreme Court had not decided *Finley*. In *Bailey*, the court stated that "the statutory power to exercise pendent party jurisdiction depends upon whether Congress in the particular statutory grant at issue has expressly or by implication negated pendent party jurisdiction." *Bailey*, slip op.

In light of the express language of the *Finley* opinion, the subsequent interpretation of the *Finley* opinion by several circuit courts, and the interpretation of the *Finley* opinion given by a respected commentator, this Court believes that the second factor of the *Huffman* test has been

modified by the *Finley* decision. This Court believes that a party must show an affirmative grant of jurisdiction under the relevant statute before a pendent party can acquire jurisdiction. It is insufficient to show merely that Congress has not expressly or by implication negated pendent party jurisdiction as the *Huffman* court required. Interpreting *Finley* so narrowly that it only has application to the Federal Tort Claims Act is untenable in light of the explicit language used by the Supreme Court distinguishing pendent party jurisdiction from pendent claim jurisdiction.

Thus, the Plaintiff must show an independent basis for jurisdiction against the pendent party to establish jurisdiction over the pendent claims. As the Plaintiff does not allege an independent basis for jurisdiction, and the Court cannot find an independent basis for jurisdiction over the Plaintiff's claims against Hagerty Brothers Company, the claims against Hagerty Brothers must be dismissed.

## CONCLUSION

The Court DENIES the Plaintiff's Motion to Remand (# 22) for the reasons stated herein. And, the Court DISMISSES all claims against Hagerty Brothers Company as this Court lacks subject matter jurisdiction over the Defendant. Thus, the Motion by Hagerty Brothers to Dismiss Count IV of the Amended Complaint (# 18) is MOOT.