**Albert G. TOMASSO, Plaintiff,**

**v.**

**The CITY OF CHICAGO, A Municipal Corp., and Chicago Police Officers, Richard Bendixon #2858, Caprio, Ignoffo, Kalas, Sergeant Allan May #1303, Alan Lee, and other unknown Chicago Police Officers, including those in beat numbers 1663A, 1631, 1630, 1663, and 1670, Defendants.**

No. 88 C 7853.

United States District Court, N.D. Illinois, E.D.

Aug. 26, 1991.

---

Robert S. Bailey, Ellen R. Domph, Chicago, Ill., for plaintiff.

Geri Lynn Yanow, Martha R. Barglow, Joseph M. Polick, Asst. Corp. Counsel, City of Chicago, Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

NORDBERG, District Judge.

The plaintiff, Albert G. Tomasso, filed a complaint under 42 U.S.C. § 1983 against the City of Chicago, six named Chicago police officers, and other unnamed officers for alleged violations of his constitutional rights. This action is before the court on the individual defendants' motion for summary judgment on Counts I and II of the Complaint, and the City's motion for judgment on the pleadings of Count III and dismissal, for lack of supplemental jurisdiction, from Count II. For the reasons set forth below, the Court grants the defendants' motion as to all of the defendants except for Officer Ignoffo.

## STATEMENT OF FACTS

Tomasso claims that certain Chicago police officers, in conformity with City policy, used excessive force in connection with his arrest on September 15, 1986. On that date, under the emboldening influence of two pints of vodka, Tomasso held up the Fort Dearborn Savings and Loan Association, making off with $1804. Officer Lee, an off-duty Chicago police officer moonlighting as a security guard at the bank, tried to arrest Tomasso at the scene, but the plaintiff escaped in a car he had stolen earlier that day. After driving a short distance, Tomasso abandoned the car in an alley and entered a nearby tavern, hoping to make a telephone call. When the telephone was not available, Tomasso left the tavern and boarded a C.T.A. bus, which is where he was eventually apprehended.

Meanwhile, Officers Caprio, Ignoffo and Kalas, plainclothes tactical officers assigned to the area, heard the police radio report of the robbery and drove their unmarked car to the bank. At the bank, they were joined by Officer Lee, who helped them search the vicinity for the get-away car. Before long, they found it in the alley where Tomasso had left it.

By this time other officers had joined the search in response to a police radio message announcing that a man fitting the robber's description had been seen boarding a bus. Sergeant May and Officer Bendixon, both in uniform and driving separate squad cars, located the bus and curbed it. Officers Caprio, Kalas and Ignoffo arrived moments later. Relying on reports that the bank robber was armed, Sergeant May boarded the bus with his revolver drawn. He was followed by the three tactical officers. The officers found the plaintiff sitting quietly with a brown bag in his lap, counting the stolen money. Tomasso offered no resistance as May handed him to the three tactical officers, who handcuffed him and led him off the bus.

At this point, the officers left the scene of the arrest and retraced the steps Tomasso had taken, hoping to find evidence such as the weapon he had allegedly brandished at the time of the robbery. After a stop at the bank, Officer Lee and Sergeant May returned to the sixteenth district police station. Officer Bendixon drove to the tavern from which Tomasso had attempted to make the call; the plainclothes officers, Caprio, Kalas and Ignoffo, did the same, transporting the plaintiff in the back seat of their unmarked car. At the tavern, one of the officers called a squadrol to transport Tomasso to the police station.

It is at this point that the stories diverge. The defendants allege that Officers Caprio and Kalas entered the tavern to search for evidence, while Officers Ignoffo and Bendixon stayed outside to guard Tomasso until the squadrol arrived. When it arrived driven by two uniformed officers, French and Hickey, Officer Ignoffo unlocked the door to the unmarked car and permitted Tomasso to exit the vehicle. Tomasso was then escorted to the squadrol by Officers Bendixon, Ignoffo and Hickey. After he had climbed the steps into the back of the wagon, the officers locked the door behind him. The officers claim that no officer set foot inside the squadrol. Once locked into the squadrol, however, the officers claim that Tomasso burst into a rampage. Alarmed by the din, Officers Bendixon and Ignoffo opened the rear door of the squadrol to check on the plaintiff. They claim to have found him kicking and pounding his head against the side of the vehicle. After

quieting him down, they transported him to the district police station.

At the police station, Tomasso was handed into the custody of Federal Bureau of Investigations agents David Moriguchi and Daryl O'Donnell. The FBI agents transported Tomasso to the FBI office. Noting a bruise above Tomasso's eye, the agents asked him if he needed medical attention. He declined the offer but requested aspirin, which he was given. At that point, Tomasso gave a statement to the agents admitting to the robbery. The statement did not include any allegations of police brutality or excessive force.

In contrast with the defendants' version of events, plaintiff claims that his arrest was marred by the brutality of the arresting officers. Tomasso alleges that Officer Ignoffo, who had baited him en route to the tavern for resisting Lee's efforts to apprehend him at the bank, dragged him from the back seat of the unmarked car, and led him to the squadrol jerking his handcuffed arms up over his head. Ignoffo then, according to plaintiff, entered the squadrol with him and beat him, both by pummelling Tomasso with his fists and by repeatedly smashing his head against the side of the squadrol until he lost consciousness. This beating was witnessed by a uniformed police officer.

He claims to have awakened to find two officers waiving ammonia capsules under his nose. As he faded in and out of consciousness, he claims the officers dragged him by his handcuffed arms into the police station, where he was placed in a room to await the arrival of the FBI agents. Although he saw the officer who had beaten him and asked a sergeant what the officer's name was, he was simply told to quiet down. Another officer, a plainclothes officer who had been at the scene of the arrest, also refused to identify the officer who had allegedly beaten him. Rather than offer him any assistance, the onlook-

ing officers ridiculed him as the one who had "resisted arrest."

When the FBI agents arrived, plaintiff claims that he did, in fact, request medical treatment but was told that he should make a signed statement first. Although he did not mention the beating in his statement, Tomasso claims that he was told by the agents that they would look into it. They then transported him to the Metropolitan Correctional Center in Chicago. According to the plaintiff, the officials at the MCC refused to accept him because of his medical condition. He claims he was taken to the hospital by ambulance, where he remained for three days under treatment for head injuries.[1]

Tomasso subsequently plead guilty to the robbery charge. He has been incarcerated since that time in federal prison in Oxford, Wisconsin. Tomasso has not seen any of the individual defendants since the date of his arrest, September 15, 1986. At his deposition, he admitted that he could not identify by name or appearance the names of the officers involved in his arrest. The names were garnered from the arrest report and from accounts given in deposition testimony by the officers.

■ Plaintiff has filed a three-count complaint based on his version of what transpired during the course of his arrest. Count I, brought under 42 U.S.C. § 1983, alleges a fourteenth amendment violation. Because § 1983 does not permit an action based upon respondeat superior, *see Patton v. Przybylski*, 822 F.2d 697, 701 (7th Cir.1987), plaintiff has voluntarily dismissed the City from Count I. Count II sets forth a common law claim for assault and battery against the individual defendants and, under a theory of derivative liability, against the City. Count III charges the City with condoning a policy of assault and battery against those in the custody of the Chicago Police Department.

---

1. Although plaintiff cites to an Exhibit C, which ostensibly corroborates this fact, the court has not seen any hospital records or other such confirmation. The defendants do not refute his allegations that he was injured and required hospitalization, however. Instead, their quarrel is with the claimed origin of those injuries. Therefore, examining the evidence in a light most favorable to the plaintiff, who is the non-moving party, this court assumes that Tomasso was, in fact, injured.

The individual defendants have moved for summary judgment as to Counts I and II. The City requests judgment on the pleadings of Count III and dismissal, for lack of pendent jurisdiction, from Count II.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A plaintiff cannot rest on mere allegations without any significant probative evidence to support his complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A moving party is entitled to judgment as a matter of law if the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which it has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) ("one of the principal purposes of the summary rule is to isolate and dispose of factually unsupported claims and defenses").

### I. *The Individual Counts*

#### A. Section 1983 liability:

█ To recover under § 1983, Tomasso must establish that the defendants were personally responsible for depriving him of a known constitutional right. *Duncan v. Duckworth,* 644 F.2d 653, 655 (7th Cir. 1981); *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982). Tomasso claims that the defendants deprived him of his rights under the fourth, fifth, ninth and fourteenth amendments by using excessive force in taking him into custody. Because the allegations in his complaint do not provide any factual support for any but the fourteenth amendment claim, this court will focus on the issue of whether Tomasso's allegation that his right to due process was violated can survive the defendants' motion for summary judgment. See, e.g. *Gumz v.*

*Morrissette,* 772 F.2d 1395, 1399 (7th Cir. 1985), *cert. denied,* 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986) (use of force by state officials is treated as a potential deprivation of liberty without due process of law under the fourteenth amendment).

█ Whether this claim can survive the defendants' motion for summary judgment depends on whether Tomasso's circumstantial identification of each officer is sufficient to establish personal responsibility. Section 1983 liability does not require direct participation. Personal responsibility may be established with evidence that an officer acted with deliberate or reckless disregard of the plaintiff's constitutional rights, or with evidence that the conduct causing the constitutional deprivation occurred at the officer's direction or with his knowledge and consent. *Rascon v. Hardiman,* 803 F.2d 269, 274 (7th Cir.1986). Whether the plaintiff's theory of liability with respect to the individual defendants is one of direct participation or not, Tomasso must present evidence implicating each defendant in the alleged violation of his constitutional rights. *Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir.1982).

In naming the six individual officers in his complaint, plaintiff has relied on the presence and involvement of each one in his arrest. In other words, Tomasso has admitted that he never knew the names of the police officers involved in his arrest and that he doubts his ability to identify any one of them either in person or in a photographic show-up. The allegations in his complaint are derived from his recollection of the sequence of events. For example, he claims that the officer who beat him had been seated on the passenger side of the front seat of the unmarked car. The arrest report identifies this officer as Officer Ignoffo. Tomasso argues in his response brief that such circumstantial evidence of each officer's complicity is sufficient to withstand the defendants' motion.

Nonetheless, Tomasso requests an extension of discovery time so that he may secure photographs of each of the individual officers and attempt to identify them in photographic show-ups. If given this

chance, Tomasso promises to have more than circumstantial evidence implicating the defendants by the time of trial. This request comes almost five years after his arrest, however, and almost a year after the close of discovery. On December 6, 1989, more than one and a half years ago, Tomasso asserted in deposition testimony that he doubted his ability to identify any of the police officers involved in his arrest. With the passage of time the likelihood of an affirmative identification grows less likely. Therefore, this Court has a difficult time believing that a photographic show-up would produce a positive identification for trial. Moreover, Tomasso's argument that his confinement since the time of his arrest has prevented him from attempting an identification at an earlier time, is not persuasive. The importance of identifying the officers allegedly involved in Tomasso's mistreatment has always been obvious, and Tomasso has failed to give any reason that would mandate an extension of the discovery cut-off date. To reopen discovery at this late date would unfairly prejudice the defendants.

■ In defending against this motion for summary judgment, Tomasso must establish that there is a genuine issue of fact for trial. This burden is not satisfied by plaintiff's promise to present other evidence at the time of trial. *See Celotex*, 477 U.S. at 332 n. 3, 106 S.Ct. at 2557 n. 3. The Court, accordingly, looks to the evidence already submitted to determine whether Tomasso has raised a triable issue with respect to any of the individual defendants.

■ Tomasso claims that the plainclothes officer who had been seated in the front passenger seat during the drive from the site of the arrest to the tavern, followed him into the squadrol and beat him. The police arrest report identifies that person as Officer Ignoffo. Accordingly, Tomasso has included Officer Ignoffo among the named defendants. Tomasso admits that he would probably be unable to identify his assailant, however. In fact, the sole identifying characteristic that Tomasso could definitively offer was that his alleged assailant was white. Ignoffo has sub-

mitted an affidavit swearing that he did not enter the squadrol with Tomasso, and that he did not, at any time, use any force against Tomasso or hit Tomasso with his fists or any other objects.

The evidence creates an issue of fact that should go to the jury. Whether or not Ignoffo was responsible for beating Tomasso cannot be decisively determined. The issue is reduced to a credibility battle between the two. Accordingly, the motion for summary judgment of the § 1983 claim against Officer Ignoffo is denied.

Tomasso has also alleged that he was treated with excessive force by several officers who attempted to revive him once the squadrol arrived at the police station. He claims that at least one, and possibly two or three officers gathered around him while one held ammonia capsules under his nose. Because he was drifting in and out of consciousness, he could not walk into the police station. Consequently, he claims that one or two officers dragged him by his handcuffed arms up the steps and into the station. The officers deny this claim.

■ Tomasso can offer no evidence as to which, if any, officers might have been involved in this particular incident of alleged mistreatment. He recalls that they were uniformed officers, all of them white—except perhaps one, who may have been black. When asked whether they were the same officers as those involved in his arrest, he stated that he could not remember. Finally, he admitted that he would most likely be unable to identify them if given the opportunity. This evidence is certainly insufficient to establish the personal responsibility of any one defendant for this incident. The plaintiff's allegations merely suggest that any one of the uniformed officers in the sixteenth district might have been responsible for dragging him into the station. Because Tomasso has failed to support this claim with any probative evidence, each of the individual defendants is dismissed from these particular allegations of excessive force, which are contained in Count I.

■ The other officers whom Tomasso has sought to implicate under § 1983 are those who failed to intervene to prevent those directly involved from beating him. A police officer "may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir.1972). In *Byrd*, although the plaintiff could not specifically identify the officers who beat him, he could identify some of the officers who were present and observed the beating. *Id.* The Seventh Circuit determined that the plaintiff should be allowed to argue on remand that the identified officers were liable for negligently failing to intervene.

■ In this case, however, Tomasso can neither identify nor describe any one of the officers who might have been present during the alleged beating. Again, he has merely recited the names of those officers identified in the arrest report. He is unable to give the number of officers who witnessed his beating or, in fact, a definite assurance that anyone at all witnessed it. While Tomasso suggested during deposition testimony that any officers present were most likely those who had accompanied him in the unmarked car, he admitted that he could not state for certain that this was the case. These vague suppositions are insufficient to create a triable issue of fact. Consequently, neither the unidentified nor the named individual defendants can be held liable under *Byrd.*

### B. Count II—Assault and Battery

Just as Tomasso has failed to present enough evidence to survive a motion for summary judgment on the § 1983 claims against all but one of the individual officers, so too has he failed to implicate anyone but Ignoffo under a common law theory of assault and battery. As was true with regard to the constitutional claims, plaintiff has not produced any facts to support his claim. Discovery was closed long ago. Because plaintiff has failed to provide sufficient evidence to implicate five of the named defendants or any unnamed officers in the excessive force claims set forth in Counts I and II, the defendants are entitled to summary judgment as a matter of law. Although it is a borderline issue, however, Tomasso has proffered enough evidence in support of Counts I and II to counter the motion for summary judgment as it pertains to defendant Ignoffo.

### C. Qualified Immunity

■ The defendants argue that the individual defendants are qualifiedly immune. Accordingly, this Court must decide whether Ignoffo may be sued for his alleged role in the beating of Tomasso. The doctrine of qualified immunity shields public officials "from liability for civil damages insofar as the conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). At the time of Tomasso's arrest, the standard applied in excessive force cases was that established in *Gumz v. Morrissette*, 772 F.2d 1395, 1400 (7th Cir.1985), overruled in part by *Lester v. Chicago*, 830 F.2d 706 (7th Cir.1987). Under *Gumz*, the use of force was considered unconstitutional if it "1) caused severe injuries, 2) was grossly disproportionate to the need for action under the circumstances, and 3) was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Id.* If Tomasso's claims were merely that the officers had handcuffed him roughly, causing soreness in his wrists and shoulders, Ignoffo would clearly be qualifiedly immune. *See, e.g., Boyd v. Angarone*, 729 F.Supp. 1194 (N.D.Ill.1990); *Alm v. Moreth*, 694 F.Supp. 1322 (N.D.Ill.1988). Tomasso, claims, however, that Ignoffo grabbed the back of his hair and repeatedly smashed his head and face into the side of the squadrol. The resulting injuries, which required a three day stay in the hospital, could certainly be termed "severe." *See, e.g., Brown v. Triche*, 660 F.Supp. 281, 286 (N.D.Ill.1987). As the Seventh Circuit stated in *Gumz*, "the ultimate question here is, after all, whether the use of force was so

egregious as to be constitutionally excessive, and the presence of some physical injury is certainly relevant to that determination." 772 F.2d at 1401. Tomasso's allegations rise to that level. Moreover, given that the plaintiff was already handcuffed and in the squadrol, and had offered no resistance since his arrest on the C.T.A. bus, it is also clear that the alleged actions of Ignoffo were both grossly disproportionate to any need for action and inspired by malice. The alleged beating satisfies the "shocks-the-conscience" standard established in *Gumz.* Accordingly, Ignoffo is not qualifiedly immune from § 1983 liability and the defendants' motion for summary judgment as to Counts I and II are denied with respect to Officer Ignoffo.

## II. *The City*

### A. Count III—*Monell* Policy Claim

In Count III of his complaint, Tomasso charges the City with § 1983 liability for violating his Fourth and Fourteenth Amendment rights. He claims that it was the custom and policy of the City of Chicago "to condone and ratify the assault and battery of those persons in the custody of the Chicago Police Department by failing to impose appropriate sanctions when such events occur." The City has moved for judgment on the pleadings and, if its motion is granted, for dismissal of the City from Count II for lack of pendent jurisdiction over the common law claims of assault and battery. Because matters outside the pleadings have been referred to both in support of and in opposition to this motion, which was consolidated with the motion of the individual defendants, this Court will treat it as a motion for summary judgment. Fed.R.Civ.P. 12(c).

■ The Supreme Court has held that municipalities can be held liable under § 1983 for constitutional violations caused by their official policies, including unwritten customs. *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). To hold a municipality liable on a policy claim, the Court must find that the alleged policy or custom proximately caused the plaintiff's

injury. *Id.* at 693–94, 98 S.Ct. at 2037. As the Supreme Court stated, "[i]t is when execution of a government's policy or custom ..., by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Id.* Therefore, to hold the City liable, Tomasso must establish that he was injured, and that some municipal policy, custom or practice proximately caused the injury. *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981).

■ Even if Tomasso were able to convince a jury that he was maliciously beaten by Officer Ignoffo at the time of his arrest on September 15, 1986, there is no evidence to support his claim that this incident was more than an isolated one, unrelated to municipal policy. An allegation of a single incident of unconstitutional conduct does not usually establish municipal liability. *Strauss v. Chicago,* 760 F.2d 765, 767 (7th Cir.1985); *Powe v. Chicago,* 664 F.2d 639, 650 (7th Cir.1981). Moreover, allegations of municipal liability premised on a City's acquiescence in prior misconduct must be supported by more than conclusory statements. *Strauss,* 760 F.2d at 767.

Tomasso has failed to set forth any factual basis for his § 1983 claim against the City. The sole basis for his allegation of municipal liability is the City's alleged failure to reprimand the six officers for their treatment of him at the time of his arrest. In deposition testimony, Tomasso admitted that while he was certain it would be easy to find others who had been similarly treated, he could not give the names of any such people nor could he provide any factual support for his claim that the City ratified and condoned the assault and battery of people taken into custody. Claims based on wholly conclusory allegations of a de facto municipal policy, the existence of which is sought to be inferred not from something the municipality did but rather from its claimed inaction, constitutes one of the most prevalent forms of abuse in § 1983 actions. *Rodgers v. Lincoln Tow-*

*ing Service, Inc.*, 596 F.Supp. 13, 20 (N.D.Ill.1984).

Because the plaintiff's conclusory allegations of a municipal policy are wholly unsupported, the City is entitled to summary judgment with respect to Count III. The City has already been dismissed from Count I. The only remaining claim against the City is a common law claim of assault and battery alleged in Count II. Because all of the federal claims against the City have been dismissed, this Court must decide whether the City should be retained as a pendent party in this litigation.

### B. Pendent State Claims

■ A court may retain pendent party jurisdiction over a defendant if such an exercise of jurisdiction is permissible under Article III of the Constitution, and if it is not prohibited under relevant statutory provisions. *See, e.g., Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989). The constitutional considerations are satisfied when 1) there is a federal claim of sufficient substance to confer federal jurisdiction, and 2) the federal and state claims are derived " 'from a common nucleus of operative fact' such that a plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.' " *Zabcowicz v. West Bend Co., Div. of Dart Indus., Inc.*, 789 F.2d 540, 546 (7th Cir.1986), *quoting United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

The statutory prong, on the other hand, requires "an examination of the posture in which the nonfederal claim is asserted and of the specific statute which confers jurisdiction over the federal claim, in order to determine whether 'Congress in [that statute] has ...expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim.' " *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978), *quoting Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49

L.Ed.2d 276 (1976). Recently, the Supreme Court has moved away from assuming that silence in a federal statute confers jurisdiction over pendent parties and has apparently taken the position that "an affirmative grant of pendent-party jurisdiction" is required. *See Finley*, 109 S.Ct. at 2006.[2]

■ Even if a court has the power to hear a pendent party claim, however, a court must still determine whether it should exercise its discretion to do so. *Huffman v. Hains*, 865 F.2d 920, 922, 923 (7th Cir.1989). This inquiry involves an analysis of such factors as judicial economy and the convenience of and fairness to the litigants. *See, e.g., Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139, *Montgomery v. Chicago*, 670 F.Supp. 230 (N.D.Ill.1987).

■ These substantive hurdles have led the Seventh Circuit to term pendent party jurisdiction an "embattled" concept, *Huffman*, 865 F.2d at 922, and to express its doubt as to the plausibility of pendent party jurisdiction ever being applicable in a suit brought under § 1983, *Ross v. United States*, 910 F.2d 1422 (7th Cir.1990). In any event, this Court does not consider the exercise of pendent party jurisdiction to be appropriate in this case. If the City were retained in this suit under the Count II allegations of assault and battery, any liability assessed would be based on respondeat superior. To allow this would defeat the prohibition in *Monell* against using a respondeat superior theory of recovery under § 1983. *See* 436 U.S. at 691, 98 S.Ct. at 2036. Accordingly, the Court declines to exercise its pendent party jurisdiction over the City of Chicago.

### CONCLUSION

The defendants' motion for summary judgment is granted as to all individual defendants under Counts I and II except for Officer Ignoffo. The defendants' motion for judgment on the pleadings with respect to Counts II and III is treated as a motion for summary judgment and is granted as to the City. Accordingly, only

---

**2.** Congress has essentially restored the area of pendent jurisdiction to its pre-*Finley* status in the Judicial Improvements Act of 1990, Pub.L.

101–650. The Act, however, does not have retroactive effect, so it is not relevant to the discussion in this case.

Officer Ignoffo remains as a defendant to this action, under Counts I and II.