Brian VUKADINOVICH, Plaintiff,

v.

**BOARD OF SCHOOL TRUSTEES OF MICHIGAN CITY AREA SCHOOLS, et al., Defendants.**

**No. S90–14 (RLM).**

United States District Court,
N.D. Indiana,
South Bend Division.

Sept. 23, 1991.

**1326**

Brian Vukadinovich, pro se.

Donald L. Dawson, Tom Wheeler, Indianapolis, Ind., for Bd. of School Trustees of Michigan City Area Schools.

Marsha Schatz Volk, LaPorte, Ind., David Cerven, East Chicago, Ind., Kathryn D. Schmidt, Merrillville, Ind., for all defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on the motion by defendants Board of School Trustees of the Michigan City Area Schools ("MCAS"), Clyde Zeek, Allan Whitlow, and Diane Dibkey for partial summary judgment, and on plaintiff Brian Vukadinovich's related motion to strike the argument raised in the defendants' reply brief or for leave to respond to the argument raised. In turn, the defendants move to strike Exhibits 1–5 to the plaintiff's motion to strike or respond.

In addition, all defendants move for summary judgment as to all claims, incorporating the motion for partial summary judgment. The defendants requested oral argument on the motion for summary judgment pursuant to District Rule 10. However, the court concludes that the parties' briefs and evidentiary materials have adequately apprised the court of the factual and legal issues and arguments and, therefore, declines to schedule oral argument.

For the reasons that follow, the court concludes that the defendants are entitled to judgment as a matter of law on each of Mr. Vukadinovich's constitutional claims. Upon disposition of the federal claims, Mr. Vukadinovich's pendent state law claims should be dismissed.

### I. DEFENDANTS' MOTION TO STRIKE

■ At the outset, the court must determine precisely what evidentiary materials are before it. The defendants move to strike the five exhibits attached to Mr. Vukadinovich's motion to strike, as they are not certified or incorporated into sworn affidavits. A court generally should not rely on unsworn or unauthenticated documents in determining a summary judgment motion, *Macklin v. Butler*, 553 F.2d 525, 528, n. 1 (7th Cir.1977), but may do so in the absence of objection. *Townsend v. Columbia Operations*, 667 F.2d 844, 849 (9th Cir.1982). As Professor Wright explains:

Exhibits that have been properly made a part of an affidavit also may be considered. Indeed, Rule 56(e) requires that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit.... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence. A letter submitted for consideration under Rule 56(e) must be attached to an affidavit and authenticated by its author in the affidavit or a deposition.

As is true of other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged. The objection must be timely or it will be deemed to have been waived.

10A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure* § 2722 (2d ed. 1983) (footnotes omitted). *See also Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1551 (9th Cir.1990). These authorities convince the court that the defendants' motion to strike should be granted.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

■ A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Certain Underwriters of Lloyd's v. General Accident Ins. Co. of America*, 909 F.2d 228, 231 (7th Cir.1990). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Lujan v. National Wildlife Federation*, — U.S. —, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sims v. Mulcahy*, 902 F.2d 524, 540 (7th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 249, 112

L.Ed.2d 207 (1990). If he fails to do so, summary judgment is proper. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990); *Tatalovich v. City of Superior*, 904 F.2d 1135, 1142 (7th Cir.1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.*, 915 F.2d 316, 320 (7th Cir.1990); *Hines v. British Steel Corp.*, 907 F.2d 726, 728 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 660 (7th Cir.1991).

The parties cannot rest on mere allegations in the pleadings, *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir.1991); *McCarthy v. Kemper Life Ins. Companies*, 924 F.2d 683, 687 (7th Cir.1991), or upon conclusory allegations in affidavits. *Mestayer v. Wisconsin Physicians Service Ins. Corp.*, 905 F.2d 1077, 1079 (7th Cir.1990). The court must construe the facts as favorably to the non-moving party as the record will permit, *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991); *Soldal v. County of Cook*, 923 F.2d 1241, 1245 (7th Cir.1991), and draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Illinois Bell Telephone Co. v. Haines and Co., Inc.*, 905 F.2d 1081, 1087 (7th Cir.1990), as long as the inferences are reasonable. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir.1989).

Even on an issue of intent, summary judgment is proper if the party with the burden at trial presents no indication of the necessary motive or intent. *Illinois Bell Telephone Co.*, 905 F.2d 1081, 1087 (7th

Cir.1990); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307 (7th Cir.1989).

The court will address the defendants' motions for partial summary judgment and for summary judgment with the above standards in mind.

## III.  THE SUMMARY JUDGMENT MOTIONS

Two separate summary judgment motions pend. Defendants MCAS, Zeek, Whitlow, and Dibkey moved for partial summary judgment on any state law claims for defamation or slander. Not long after that, those defendants joined the other defendants in seeking summary judgment on all claims. The court will address both motions simultaneously. For reasons that follow, the court turns first to the federal constitutional claims.

### A.  Retaliatory Discharge

Mr. Vukadinovich alleges two constitutional violations in Count I of his second amended complaint: retaliatory discharge for the exercise of his First Amendment rights, and denial of due process during the administrative phase of his discharge. Mr. Vukadinovich claims that his 1988 discharge was in retaliation for his public criticism of MCAS Superintendent Clyde Zeek in 1986. The defendants claim that Mr. Vukadinovich's public criticism did not motivate the discharge.

The Seventh Circuit set forth the analysis of First Amendment claims of this type in another action Mr. Vukadinovich brought against a previous employer:

> In cases where a public employee's First Amendment rights are at issue, the courts engage in a three-step analysis.
>
> First, the court must determine whether the plaintiff's speech is constitutionally protected. This is a question of law.... If the plaintiff's speech is protected by the first amendment, then two issues of fact must be addressed. The first factual issue is whether the defendant's actions were motivated by the plaintiff's constitutionally protected speech.... If the plaintiff can demonstrate that his or her constitutionally pro-

tected speech was a substantial or motivating factor in the defendant's actions, the defendant must then have the opportunity to prove that it would have taken the same action in the absence of the plaintiff's exercise of his or her first amendment rights....

*Vukadinovich v. Bartels*, 853 F.2d 1387, 1389–90 (7th Cir.1988) (quoting *Hesse v. Board of Education*, 848 F.2d 748, 754 (7th Cir.1988) (Flaum, J., dissenting) (citations omitted). *See also Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

■ The defendants assume, for purposes of this motion, that Mr. Vukadinovich's speech was constitutionally protected, but claim that Mr. Vukadinovich fails prongs two or three of the Seventh Circuit test, because he cannot show that his termination was motivated by the exercise of his First Amendment rights. Mr. Zeek, Mr. Hanke, and Ms. Dibkey testified in their depositions that Mr. Vukadinovich's criticisms in 1986 had nothing to do with the cancellation of Mr. Vukadinovich's contract in 1988.

Mr. Vukadinovich did not assert any link between his speech and his discharge during the administrative hearing on his termination. In *Barkoo v. Melby*, 901 F.2d 613 (7th Cir.1990), the plaintiff, like Mr. Vukadinovich, had at first failed to link her speech with her employment discharge.

> The defendants are correct when they point out that Barkoo did not even bother to plead that speech in her initial complaint; even she seems to have recognized that it was not a major contributing factor to any disciplinary actions taken by defendants. The issue seems to have taken on greater importance because it is the only justification for Barkoo's presence in federal court.

*Barkoo*, 901 F.2d at 620.

■ The defendants also claim that even if Mr. Vukadinovich could provide evidence that his speech was a substantial or motivating factor in his discharge, the depositions of Mr. Zeek, Mr. Hanke, and Ms. Dibkey show that they would have dis-

charged him regardless of his speech. The defendants have shown that their motivation for firing Mr. Vukadinovich was his well-publicized problem with alcohol and legal authorities.

Mr. Vukadinovich cites *Ciechon v. City of Chicago,* 686 F.2d 511 (7th Cir.1982), in which the court concluded that the City of Chicago improperly permitted itself to be manipulated by publicity and pressure from a family in its decision to discharge a paramedic. In *Ciechon,* however, the City's investigation of a complaint against the paramedic was "so incomplete and biased as to demonstrate clearly that the City made no effort to assess the incident fairly", 686 F.2d at 520, and the City had misused its own disciplinary procedures. 686 F.2d at 521–22.

The defendants cite *Munnelly v. United States Postal Service,* 805 F.2d 295, 301 (8th Cir.1986), in which the court noted that violation of public trust is directly related to a postmaster's continued effectiveness. *Munnelly* involved a discharge for financial misconduct, which directly affected the plaintiff's job performance. Mr. Vukadinovich's discharge involved his reported activities beyond his teaching responsibilities.

### B. Due Process in Discharge

■ Mr. Vukadinovich notes that counsel for MCAS had served as the hearing officer in his discharge hearing, and argues that the procedures employed were unfair. In *Ciechon,* the court noted that the City's charges against the plaintiff were not brought "by proper authority" as provided in the Municipal Code, but were brought by counsel's staff. While noting that *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), held that combining investigative and adjudicatory functions in a medical examining board did not evidence bias which would violate due process, the *Ciechon* court stated that: "Here not only did the same counsel represent both the prosecuting agency and the adjudicatory body, but the Municipal Code and the Rules of the Personnel Board themselves separate the prosecutorial and adjudicatory functions." *Ciechon,* 686 F.2d at 522 n. 14.

Mr. Vukadinovich has not demonstrated that any separation of functions was required or violated in his case.

In *Lamb v. Panhandle Community Unit School Dist. No. 2,* 826 F.2d 526 (7th Cir.1987), a high school student who had been suspended for drinking alcohol at a school function alleged that the school board hearing at which his suspension was considered was constitutionally defective because the school board attorneys, the principal, and superintendent performed dual roles. The Seventh Circuit rejected this argument:

[T]he combination of an advisory function with a hearing participant's prosecutorial or testimonial function does not create a *per se* facially unacceptable risk of bias. In *Brewer* [*v. Austin Independent School District,* 779 F.2d 260 (5th Cir.1985)], the student admitted the conduct that gave rise to his punishment. The assistant principal acted as an investigator, witness, and a voting member of the review board. The court stated that:

A school administrator involved in the initiation and investigation of charges is not thereby disqualified from conducting a hearing on the charges, although the facts of an occasional case may demonstrate that a school official's involvement in an incident created a bias "such as to preclude affording the student an impartial hearing."

*Brewer,* 779 F.2d at 264 (*quoting Sullivan v. Houston Independent School District,* 475 F.2d 1071, 1077 (5th Cir.), *cert. denied,* 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973)). Thus, in the absence of some evidence of actual bias ... summary judgment was proper.... Therefore, because the roles of the parties in this situation did not create an impermissible risk that the board was biased or prejudiced, Count III fails to state a claim.

*Lamb,* 826 F.2d at 529–30. Mr. Vukadinovich has not demonstrated neither actual bias on the part of the defendants or counsel for MCAS nor an impermissible risk of bias. Therefore, the MCAS attorney's per-

formance of dual roles did not deprive Mr. Vukadinovich of due process.

Mr. Vukadinovich claims that he was deprived of due process because he was denied a meaningful post-deprivation hearing after his discharge. The court's July 25, 1990 order stated that if Mr. Vukadinovich received adequate notice and an opportunity to be heard before his discharge, he cannot claim violation of due process. Mr. Vukadinovich acknowledges receiving notice of the pre-deprivation hearing pursuant to IND.CODE 20–6.1–4–11(a)(1), and the statutory procedures for terminating a teacher's contract were attached to that notice. He also was provided the specific reasons for his termination. Mr. Vukadinovich acknowledges that he and a union representative participated in the hearing, where Mr. Vukadinovich heard the grounds for his dismissal and was allowed to present evidence and cross-examine witnesses.

Mr. Vukadinovich had adequate notice of the hearing and an opportunity to present his side, as is required to meet the standards of due process. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985); *Smith v. Town of Eaton, Indiana*, 910 F.2d 1469, 1472 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991).

### C. Equal Protection

In Count III of his complaint, Mr. Vukadinovich alleges that the defendants violated his right to equal protection because they arbitrarily singled him out from other employees who were reported as alcohol or substance abusers or who were charged with or convicted of crimes. Mr. Vukadinovich levelled an unequal protection allegation against his former employer in *Vukadinovich v. Bartels*, 853 F.2d 1387 (7th Cir.1988), as well, and the Seventh Circuit rejected it. In that case, Mr. Vukadinovich claimed that he was fired for exercising his First Amendment rights, while other teachers who were uncertified like him were not fired.

Such a claim fits uneasily into an equal protection framework. Normally, we think of the Equal Protection Clause as forbidding the making of invidious classifications—classifications on the basis of such characteristics as race, religion, or gender. Here, plaintiff is not claiming that he was classified on the basis of some forbidden characteristic, only that he was treated differently because he exercised his right to free speech. We believe this is best characterized as a mere rewording of plaintiff's First Amendment retaliation claim, which was properly disposed of.

*Vukadinovich v. Bartels*, 853 F.2d at 1391–92. Now, as before, Mr. Vukadinovich does not assert that he was treated differently from similarly situated employees because of some invidious classification. In essence, his equal protection claim is that he was discharged for exercising his right to free speech, and this is covered in his allegations in Count I.

### D. Due Process: Stigma

Count IV is based on slander. Mr. Vukadinovich's second amended complaint alleges:

22. Defendants, Allan Whitlow and School Board President, Diane Dibkey, made reckless and false statements of immorality against Plaintiff which were published in several public newspapers on March 23, 24, and 25, 1988. This public defamation subjected the Plaintiff to public scorn ... and caused substantial and irreparable injury to Plaintiff's personal and professional reputation as a public school teacher. Because of this public defamation by these Defendants, Plaintiff was generally held up to ridicule and made the subject of statements that he was an immoral person and that professional educators and students should not associate with him. The Defendants' wrongful acts of publicly defaming Plaintiff resulted in the inability of Plaintiff to secure another teaching job in a public school system and such stigma imposed upon Plaintiff effectively foreclosed him from teaching opportunities.

23. Defendant, Clyde M. Zeek, on June 10, 1988, made willful defamatory and slanderous statements about the Plaintiff before an assembled group of public administrators. These willful defamatory and slanderous comments publicly made by Defendant, Zeek, about Plaintiff to public school administrators subjected Plaintiff to further ridicule and public scorn and irreparably damaged Plaintiff's standing in associations in his community.

\*    \*    \*    \*    \*    \*

41. Defendants', Allan Whitlow and Diane Dibkey, abusive defaming and slandering Plaintiff by stigmatizing him as an immoral person in public newspapers on March 23, 24 and 25, 1988, was done under color of law, without notice and without due process and for the purpose of depriving Plaintiff his proprietary interest and to subject the Plaintiff to public scorn and ridicule which caused substantial irreparable injury to Plaintiff's reputation as a public school teacher. Defendant's, Clyde Zeek, June 10, 1988, defamatory and slanderous statements about Plaintiff at a group of public school administrators were made under color of law and resulted in the intentional damaging of Plaintiff's standing and associations in his community and thereby, violating Plaintiff's due process rights upon deprivation of his liberty interest and further caused a defamation under the law of the state of Indiana. The slanderous statements subjected Plaintiff to public scorn and ridicule which caused substantial irreparable injury to Plaintiff's reputation as a public school teacher. The ... wrongful conduct of the Defendants defaming and slandering of Plaintiff caused a serious stigma to be intentionally inflicted upon the Plaintiff which effectively foreclosed other opportunities and damaged Plaintiff's standing and associations in his community.

■ Mr. Vukadinovich sent the defendants a "Notice of Claim pursuant to I.C. 34–4–16.5–9" on August 14, 1989. The defendants correctly note that under the Indiana Tort Claims Act, a person bringing a tort action against a municipality or its employees must serve notice within 180 days after the loss occurs. IND.CODE 34–4–16.5–2. Because Mr. Vukadinovich's notice was served more than 180 days after the defendants' comments, the defendants claim that Mr. Vukadinovich's state law claims of slander and defamation are barred. *Warfield v. Adams*, 582 F.Supp. 111 (S.D.Ind.1984). However, the defendants note that failure to serve a timely notice does not bar federal claims under 42 U.S.C. § 1983. *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); *Craig v. Witucki*, 624 F.Supp. 558, 560 (N.D.Ind.1986).

Mr. Vukadinovich responds by clarifying the basis on which he seeks relief for the alleged slander and defamation: he does not rely on state common law, but only on 42 U.S.C. § 1983. Therefore, his failure to serve timely notice does not bar his claims against the defendants for slander and defamation.

The parties do not dispute that federal claims are not affected by the notice requirements of the Indiana Tort Claims Act. They also do not dispute that Mr. Vukadinovich's failure to serve timely notice pursuant to the Indiana Tort Claims Act bars any state common law tort claims against the movant. IND.CODE 34–4–16.5–7; *Poole v. Clase*, 476 N.E.2d 828 (Ind.1985). Nonetheless, because the court ordinarily should not decide state law issues if the federal claims are resolved before trial, the court declines to determine whether a state law defamation claim would be barred. It is sufficient to note that Mr. Vukadinovich seeks to maintain a § 1983 claim based on the allegedly defamatory remarks.

In their reply brief, the defendants claim that Mr. Vukadinovich's claims of slander and defamation pursuant to § 1983 also must fail. Noting that Mr. Vukadinovich asserts violations of his constitutionally protected due process rights, the defendants claim that Mr. Vukadinovich received all the process to which he was due and, therefore, they are entitled to summary judgment as to Mr. Vukadinovich's claims

of deprivation of due process related to any defamation or slander.

In response to the defendants' § 1983 argument in their reply, Mr. Vukadinovich filed his motion to strike or for leave to respond to newly raised issues. As Mr. Vukadinovich put it, "After the plaintiff effectively demonstrated that the Indiana Tort Claims Act did not apply in his § 1983 defamation and slander claims, the defendants in all reality submitted another motion for summary judgment for the federal claims of defamation and slander in the form of a Reply, even though they did not address the federal issues in their separate Motions, Statements of Facts, or Conclusions of Law."

Mr. Vukadinovich is correct that a movant may not properly raise new issues for the first time in a reply brief, but Mr. Vukadinovich raised the issue of slander and defamation under § 1983 in his response. The defendants discussed that issue in their reply. Mr. Vukadinovich also discussed it in his motion to strike or respond and the defendants have addressed it in their response to Mr. Vukadinovich's motion. The parties have taken the opportunity to brief this issue, and the court will consider it along with the state law issue raised in the motion for partial summary judgment. The plaintiff's motion to strike or to respond is moot; it contains a response.

█ The defendants claim that defamation alone, without an accompanying loss of government employment or a loss of a liberty or property interest, is insufficient to constitute a deprivation of due process. *Paul v. Davis*, 424 U.S. 693, 706, 96 S.Ct. 1155, 1163, 47 L.Ed.2d 405 (1976); *Bone v. City of Lafayette, Indiana*, 763 F.2d 295 (7th Cir.1985). Mr. Vukadinovich lost his government employment, but the defendants claim that his loss of employment preceded the statements that gave rise to the defamation claims. MCAS terminated Mr. Vukadinovich after a hearing. The three assertedly defamatory newspaper articles were reports of the MCAS hearing and reasons for firing Mr. Vukadinovich. Mr. Zeek's June 10, 1991 comments and the newspaper articles followed the hearing and termination. Therefore, the defendants assert that the comments and article could not have defamed Mr. Vukadinovich or deprived him of a constitutionally protected interest.

Mr. Vukadinovich claims that the articles and comments created a stigma against him which prevented him from obtaining other public employment. Under *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir.1985), governmental defamation of a public employee being discharged may constitute a deprivation of a liberty interest: the interest in the possibility of future employment in the profession. The Seventh Circuit explained:

> [T]he Supreme Court has held that the refusal to reemploy an individual may implicate a liberty interest where the state, in declining to rehire, makes charges against the individual that might seriously damage his standing and associations in his community. *See Board of Regents v. Roth*, 408 U.S. [564] at 573, 92 S.Ct. [2701] at 2707 [33 L.Ed.2d 548] (1972). The Court explained that charges of dishonesty or immorality or statements damaging one's good name, reputation, honor or integrity would implicate liberty interests. *Id.* The Court noted that a liberty interest would also be implicated where a stigma or other disability forecloses the individual's freedom to take advantage of other employment opportunities such as when a state invokes regulations to bar a teacher from all public employment in state universities. *Id.* However, the Court warned that mere proof that the individual is "somewhat less attractive to some other employers" would not establish the requisite foreclosure of opportunities. *Id.* at 574 n. 13, 92 S.Ct. at 2707–08 n. 13.

In interpreting the Supreme Court's holding in *Roth*, this court has held that a liberty interest is implicated when either (1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism or subversive act; or (2) the state imposes a

stigma or other disability on the individual which forecloses other opportunities. *Adams v. Walker*, 492 F.2d 1003, 1008 (7th Cir.1974).... A liberty interest is not implicated where the charges merely result in reduced economic returns and diminished prestige, but not permanent exclusion from or protracted interruption of employment. *Stretten v. Wadsworth*, 537 F.2d [361] at 366 [9th Cir. (1976)].

*Munson v. Friske*, 754 F.2d at 693.

In this case, the defendants' statements regarding Mr. Vukadinovich touched not only upon his professional skills, but upon his morality as well. The defendants' concern in considering his termination was that the students should have positive role models as teachers. Nonetheless, it cannot be said that the defendants imposed a stigma or other disability upon Mr. Vukadinovich that foreclosed other opportunities. Although he suffers diminished prestige, he points to no evidence that he suffers permanent exclusion or protracted unemployment. Further, the defendants did not seek to exclude him from future teaching opportunities; they merely removed him from his position. For this reason, it does not appear that a liberty interest is implicated.

More important, from a due process standpoint, Mr. Vukadinovich's termination was preceded by notice and an opportunity to be heard, as set forth below, and any deprivation he suffered was not without due process. The due process clause does not prohibit stigmatization of a discharged public employee; it prohibits deprivation of liberty without due process of law. The correctness of the decision produced by the procedure is not the test of due process.

Injury "to reputation by itself [is] not a 'liberty' interest protected under the Fourteenth Amendment.... Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, —— U.S. ——, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991) (citing *Paul v. Davis*, 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976)). Therefore, the defendants correctly contend that any injury to Mr. Vukadinovich's reputation is not a constitutional violation.

Accordingly, the defendants are entitled to judgment as a matter of law on any slander or defamation claims pursuant to 42 U.S.C. § 1983.

### E.   First Amendment: Post–Discharge

In Count V, Mr. Vukadinovich alleges that Carmelo Gentile, the principal of the high school where Mr. Vukadinovich was employed, deprived him of his First Amendment rights by preventing him from speaking to the media about his termination, and that Mr. Gentile ordered him not to associate with people at the high school. The defendants state that the incidents with Mr. Gentile took place almost a year after Mr. Vukadinovich was fired. Therefore, Mr. Gentile had no authority over Mr. Vukadinovich at the time.

■ The defendants also claim that the discharge was not a matter of public concern and, therefore, not subject to First Amendment protection. *Barkoo v. Melby*, 901 F.2d at 618; *Vukadinovich v. Bartels*, 853 F.2d at 1389. The court agrees with the defendants that Mr. Vukadinovich's employment and discharge are not matters of public concern and, therefore, any direction by Mr. Gentile not to discuss it with the media is not a violation of Mr. Vukadinovich's First Amendment rights.

■ The defendants also note that they were entitled to restrict Mr. Vukadinovich's access to the school once he was no longer employed there. Although he had been terminated, he was allowed to enter the premises, but was required to check in and was told not to discuss his termination with employees or students. As was made clear in *May v. Evansville–Vanderburgh School Corp.*, 787 F.2d 1105, 1114 (7th Cir.1986), a public school is not a public forum, and the school is not open to the general public. Therefore, Mr. Vukadinovich has no First Amendment-based claim against the defendants arising from their requirement that if he entered the school premises, he was to check in and not discuss his termination.

### F.  Mr. Hanke

In Count VI, Mr. Vukadinovich alleges that Mr. Hanke acted improperly in voting to terminate his contract because Mr. Hanke "privately told people that the School Board's action of terminating plaintiff's teaching contract and refusal to honor the arbitrator's decision was improper." The defendants correctly argue that this count fails to state a claim upon which relief can be granted.

### G.  State Law Claims

Count II of the second amended complaint alleges that the defendants breached their contract with Mr. Vukadinovich. In the order of July 25, 1990, the court abstained from deciding the state law issue of breach of contract because of the parallel state proceedings pending at that time. The defendants ask that if the court grants summary judgment as to the other claims, it grant summary judgment as to the state law contract claims, as well. In *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Court held that when a court dismisses a federal claim before trial, it should generally dismiss the pendent state claims, as well. Two exceptions to this rule are (1) when the statute of limitations has run on the state law claims, and (2) when substantial judicial resources have already been committed to the state law claim. *Moses v. Kenosha County*, 826 F.2d 708, 710–11 (7th Cir.1987). Because of the earlier parallel state law proceedings and this court's abstention as to the state law claims in the order of July 25, 1990, the federal court has not invested its resources into the state law breach of contract claim.

Mr. Vukadinovich claims that the statute of limitations has run on the breach of contract claim, but Indiana's journeyman's statute would enable Mr. Vukadinovich to pursue his state law claim should this court dismiss it for lack of jurisdiction. That statute provides:

> If, after the commencement of an action, the plaintiff fails therein, from any cause except negligence in the prosecution ... a new action may be brought within five (5) years after the determination, and be

deemed a continuation of the first, for the purposes herein contemplated.
IND.CODE 34–1–2–8.

In *Huffman v. Hains*, 865 F.2d 920 (7th Cir.1989), the district court dismissed a state malpractice claim after all federal claims had been dismissed, although the plaintiff argued that the limitations period had run on his malpractice claim. The Seventh Circuit affirmed, stating that: "[T]he statute of limitations should not be a concern in this case because Indiana has a savings statute.... The savings statute applies in a case such as this one where a federal court dismisses a state-law claim for lack of subject matter jurisdiction." 865 F.2d at 924. Further, the plaintiff had cited nothing that would indicate that the savings statute would not apply to his case, and the court had no serious doubt that it would. As in *Huffman*, the savings statute should apply to Mr. Vukadinovich's state law claim, and the court should not retain jurisdiction over that claim if summary judgment is granted as to all federal claims.

The court already has determined that summary judgment is proper as to each of the plaintiff's federal claims. Therefore, jurisdiction should not be exercised over the pendent state law contract claim or over any remaining state law defamation claim.

## IV.  CONCLUSION

For the foregoing reasons, the court hereby:

(1) GRANTS the defendants' motion to strike the plaintiff's exhibits;

(2) DENIES the plaintiff's motion to strike or to respond;

(3) DENIES the defendants' request for oral argument;

(4) GRANTS the defendants' motions for summary judgment on the plaintiff's federal claims; and

(5) DISMISSES the plaintiff's pendent state law claims for want of jurisdiction.

SO ORDERED.