Janice K. **COLLINS,** Plaintiff,

v.

Kim **HALL,** et al., Defendants.

No. 3:96–CV–209RM.

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 23, 1997.

Kenneth M. McDermott, Plymouth, IN, Franklin A. Morse, II, South Bend, IN, for plaintiff.

Mary H. Wertz, Indianapolis, IN, Terry G. Duga, Indianapolis, IN, for defendant Kim Hall.

Carmen M Piasecki, Eugenia S. Schwartz, Nickle and Piasecki, South Bend, IN, Mary H. Wertz, Terry G. Duga, Atty. Gen.'s Office, Indianapolis, IN, for defendant Mark E. Caruso.

## MEMORANDUM AND ORDER

MILLER, District Judge.

In a letter to those who sell alcoholic beverages in Starke County, Indiana, the county prosecuting attorney (Kim Hall) and deputy

prosecuting attorney (Mark Caruso) branded Janice Collins an "habitual drunkard" for purposes of an Indiana statute that prohibits the sale of alcoholic beverages to known habitual drunkards. The letter was withdrawn three days later. Ms. Collins brings this suit for damages and injunctive relief, contending that the statute is unconstitutionally vague and that the prosecutors' action deprived her of her rights under the federal Due Process Clause. Because the court finds that the plaintiff has not been deprived of any liberty interest recognized by the United States constitution and that she lacks standing to seek injunction against the statute's operation in the future, the court grants the defendants' motions for summary judgment.

Indiana's "habitual drunkard statute" provides: "It is unlawful for a permittee to sell, barter, exchange, give, provide, or furnish an alcoholic beverage to a person whom he knows to be a habitual drunkard." IND.CODE § 7.1–5–10–14. Ms. Collins claims that this statute is unconstitutional on its face and that its application to her violated the Due Process Clause of the Fourteenth Amendment. Her name appeared on a list within a letter distributed to numerous alcoholic beverage permittees in Starke County, Indiana. The letter characterizes those on the list as habitual drunkards, and notified its recipients that the seldom-used habitual drunkard statute would be enforced with potentially severe consequences. Former Starke County Deputy Prosecuting Attorney Mark Caruso made the decision to draft and distribute the letter; Mr. Hall, the Starke County prosecutor, approved Mr. Caruso's under-taking this project. Mr. Caruso compiled the list of 59 names by researching public records to ascertain who had been arrested for multiple alcohol-related offenses. Ms. Collins had been arrested on two occasions for alcohol related offenses so Mr. Caruso included her name on the list.[1]

Mr. Caruso believed that enforcing the habitual drunkard statute would reduce crime by preventing those identified as habit-ual drunkards from becoming intoxicated. While this purpose is clear, much is unclear: no clearly defined criteria determined whose names would appear on the list; there was no established length of time during which one's name would remain on the list; no procedure existed to have one's name removed from the list or to contest an appearance on the list; and no protocol existed as to whether the list would be posted in public view or where only the permittee or its employee could see it. A police officer distributed this letter in February of 1996 to certain permittees in Starke County:

Dear alcoholic beverage licensee:

Under Indiana Code section 7.1–5–10–14 Sales to Habitual Drunkards, it is a class B misdemeanor to serve alcohol to anyone who is in the habit of becoming intoxicated. The following is a list of individuals who have multiple alcohol related arrests, and should be considered "Habitual drunkards" for purposes of this statute.

An establishment selling or serving alcohol to these individuals will be cited, and a copy of the citation will be sent to the Alcoholic Beverage Commission, which may revoke your license if it finds sufficient violations have occurred.

Please post this list in an area where all your employees will see it. Notice to licensee is sufficient to bind his employees.

Mark E. Caruso

Deputy Prosecuting Attorney

List of Names

Three days after the letter's distribution, Mr. Hall informed the permittees to ignore the letter until further notice. The letter and list no longer are in distribution, and the statute is not enforced in Starke County. The summary judgment record does not reveal the extent to which the statute might actually have been enforced during the three-day period, but it is undisputed that the statute never was enforced with respect to Ms. Collins.

---

1. Ms. Collins admits in her pleadings that she was arrested on two occasions for alcohol-related offenses. *See* Plaintiff's Second Amended Compl., ¶ 16. In her motion for leave to file a third amended complaint, she now claims that one of those arrests was not actually alcohol related. For purposes of deciding these summary judgment motions, this factual issue is irrelevant.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) "mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." "Where the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file.…

In considering whether there are any genuine issues of material fact, [the court] extract[s] all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Where a fact is disputed, the nonmoving party must show that the disputed fact is material under the applicable law. The applicable law will dictate which facts are material. Only disputes that could affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

*National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 264–265 (7th Cir.1996) (citations omitted).

■ On November 25, 1997, more than five weeks after the defendants filed their dispositive motions and less than two months before the final pretrial conference and trial, Ms. Collins sought leave to file a third amended complaint. Her motion states that the third amended complaint alleges her due process claim with greater specificity and clarifies some factual allegations related to her arrest record. She does not explain why the amendment is necessary or why justice requires the court to grant her leave to make this filing at this late stage in this litigation.

Ms. Collins twice has previously amended her complaint and the designated time for amending pleadings is long past. This point in time—after deadlines have been extended on several occasions, well after the close of discovery and after the filing of dispositive motions—is too late to file an amended complaint, particularly when the amended complaint would breathe a new factual issue into the case after the close of discovery [2] and no arguments have been presented to convince the court of the need for amendment. *See* Fed.R.Civ.P. 15(a); *Cowen v. Bank United of Texas*, 70 F.3d 937, 944 (7th Cir.1995). The court denies Ms. Collins's motion for leave to file a third amended complaint.

Turning to the dispositive motions, the defendants argue that Ms. Collins cannot state a claim because she does not specifically allege injury to a constitutionally protected interest, but only generally alleges that her right to due process was denied. Mr. Caruso and Mr. Hall argue that Ms. Collins's claim must fail because she cannot identify a constitutionally protected liberty or property interest of which she was deprived by having her name included on the habitual drunkard list. There can be no procedural due process violation, they continue, because without a constitutionally protected interest, no process is due even if some type of injury results from governmental action.

The liberal notice requirements of Fed. R.Civ.P. 8 do not require technical precision

---

**2.** See note 1 *supra*.

in pleading, but are grounded in the concept of notice. Ms. Collins's complaint—when read in a light most favorable to her—sufficiently alleges (1) damage to her reputation; and (2) a change in her legal status from one for whom the purchase of alcohol was legal to one for whom the purchase of alcohol was illegal. Ms. Collins argues that under *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), Indiana's habitual drunkard statute is unconstitutional on its face and that its application to her deprived her of certain liberties without the benefit of procedural due process. She further asserts that under *Constantineau*, the damage to her reputation, coupled with loss of the right to purchase and consume alcohol, constitutes a legal harm of constitutional magnitude.

▮ Before a government body deprives a person of a constitutionally protected interest in life, liberty, or property, the Due Process Clause generally requires the governmental body to conduct some type of hearing accompanied by notice and an opportunity to be heard. *Vukadinovich v. Bd. of Sch. Trustees*, 978 F.2d 403, 410 (7th Cir.1992), *cert. denied*, 510 U.S. 844, 114 S.Ct. 133, 126 L.Ed.2d 97 (1993). The right to a hearing is not invoked automatically each time government action deprives a person of some right or causes legal harm; only the deprivation of an interest that is constitutionally protected invokes the protections of procedural due process. Evaluation of a procedural due process claim, therefore, requires a two-step analysis. *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir.1996) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)). The court first considers whether the plaintiff was deprived of a constitutionally protected interest in life, liberty, or property; if so, the court then determines what process was due with respect to that deprivation. *Id.*

▮ Injury "to reputation by itself [is] not a 'liberty' interest protected under the Fourteenth Amendment.... Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (citing *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). Inclusion on the habitual drunkard list, however, could limit one's ability to purchase alcohol in addition to causing damage to one's reputation. While the federal constitution creates no right to purchase alcohol, when a state automatically grants such a right to all citizens of the majority age, the right may amount to a liberty or property interest of which a person cannot be deprived without due process. *See* Nowak & Rotunda, Constitutional Law § 13.4 (5th ed.1995).

In *Constantineau*, the plaintiff's name was posted pursuant to the Wisconsin "habitual drunkard statute" that gave the government the discretionary authority to "post" one's name, thereby making it illegal for a permittee to sell alcohol to that person.[3] Finding that posting an individual's name without notice and a hearing beforehand violated the due process clause, the Court stated that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.... Under the Wisconsin Act, a resident of Hartford [Wisconsin] is given no process at all." *Constantineau*, 400 U.S. at 437. The defendants argue that subsequent cases have tempered whatever liberty interest in reputation *Constantineau* created.[4]

In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the plaintiff's name and picture were included on a flyer that was distributed to merchants in region identifying those listed as active shoplifters.

---

3. The Wisconsin statute provided that designated persons may in writing forbid the sale or gift of intoxicating liquors to one who "by excessive drinking" produces described conditions or exhibits specified traits, such as exposing himself or family "to want" or becoming "dangerous to the peace" of the community. *Constantineau*, 400 U.S. at 434.

4. Mr. Caruso may be arguing that *Constantineau* has been overruled implicitly. The court believes that as long as *Constantineau* and ensuing cases can be harmonized, it is this court's duty to do so, rather than to declare the Supreme Court to have done implicitly that which it has declined to do explicitly.

In suit under § 1983, the plaintiff asserted that this conduct deprived him of a liberty interest protected by the Fourteenth Amendment without procedural due process. The Court held that the asserted interest in reputation was not liberty or property guaranteed against state deprivation without due process of law. *Paul,* 424 U.S. at 712. The Court rejected the proposition that "reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul,* 424 U.S. at 701. Harmonizing this conclusion with the holding of *Constantineau,* the *Paul* court reasoned,

> We think that the italicized language in the last sentence quoted, "[Where a person's good name, reputation, honor, or integrity is at stake] *because of what the government is doing to him,* notice and an opportunity to be heard are essential," referred to the fact that the governmental action taken in that case deprived the individual of a right previously held under state law—the right to purchase or obtain liquor in common with the rest of citizenry. "Posting," therefore, significantly altered her status as a matter of state law, and it was that alteration of legal status which, combined with the injury resulting from the defamation, justified the invocation of procedural safeguards. The "stigma" resulting from the defamatory character of the posting was doubtless an important factor in evaluating the extent of harm worked by that act, but we do not think that such defamation, standing alone, deprived Constantineau of any "liberty" protected by the procedural guarantees of the Fourteenth Amendment.

*Paul,* 424 U.S. at 708–709.

Since *Paul,* courts have confirmed the interrelated principles that a person has no liberty or property interest in reputation alone and that governmental defamation alone does not invoke the due process protection of the Fourteenth Amendment. *See, e.g., Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). For example, in *Vukadinovich v. Bd. of Sch. Trustees,* 776 F.Supp. 1325 (N.D.Ind.1991), *aff'd* 978 F.2d 403 (7th Cir.1992), *cert. denied* 510 U.S. 844, 114 S.Ct. 133, 126 L.Ed.2d 97 (1993), the plaintiff was fired from his job as a public school teacher. He alleged that the defendants' comments were defamatory, thus harming his reputation and his standing in the community, and foreclosing him from obtaining future employment as a teacher. The statements were critical of his morality as well as his professional skills. The comments caused him to suffer diminished prestige, but there was no evidence that the comments had or would have any tangible effect upon his future teaching opportunities, so no liberty interest was implicated. *Vukadinovich,* 776 F.Supp. at 1333.

Although Ms. Collins' claim does not arise in the context of government employment, cases involving governmental defamation of public employees are instructive. The plaintiff in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), was hired for a term of less than one year as a state university professor. At the contractual term's expiration, the university decided not to re-hire him. The plaintiff alleged that he was deprived of a constitutionally protected interest—his job—without the protection of procedural due process. The Court held that a person is not "deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Roth,* 408 U.S. at 575. The Court suggested, however, that the plaintiff might have been deprived of a liberty interest if the decision to not rehire had been accompanied by charges that damaged his reputation or if that decision imposed upon him a stigma that foreclosed his freedom to take advantage of other employment opportunities. *Roth,* 408 U.S. at 572–573.

In *Vukadinovich,* the Seventh Circuit—citing *Constantineau*—affirmed the notion that one's good name may implicate a liberty interest: "We assume, *arguendo,* that Vukadinovich had a constitutionally protected interest in his good name .... where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Vukadinovich,* 978 F.2d at 413. In the same

discussion, however, the court limited this idea by reaffirming that "the mere defamation of an individual ... [is not] sufficient to invoke the guarantees of procedural due process absent accompanying loss of government employment" and that "defamation, without the threat of lost government employment is not a liberty interest protected by the Fourteenth Amendment, though, by itself, it is a tort actionable under the laws of most States." *Vukadinovich*, 978 F.2d at 413 (citing *Paul v. Davis*, 424 U.S. at 706; *Siegert v. Gilley*, 500 U.S. 226 at 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)) (internal quotations and citations omitted).

Governmental defamation of an employee may result in the deprivation of a constitutionally protected liberty interest, but the liberty interest is implicated by the tangible harm that accompanies the defamation. *Siegert*, 500 U.S. at 232–234; *Roth*, 408 U.S. at 573–575; *Vukadinovich*, 978 F.2d at 412–413. A liberty interest could be implicated in the context of the habitual drunkard statute if the governmental defamation results in the person named on the list suffering an independent tangible consequence, such as being refused the right to purchase alcohol.

■ Thus, Ms. Collins's complaint states a claim under § 1983 and Mr. Caruso's motion to dismiss for failure to allege a constitutionally protected interest must be denied. Whether a factfinder could find that she was deprived of a constitutionally protected interest in liberty or property is a different issue. "Rights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect." *Carey v. Piphus*, 435 U.S. 247, 254, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Ms. Collins's claim can survive summary judgment only if a trier of fact could find that she actually suffered some

injury other than damage to her reputation as a result of the government defamation.

The habitual drunkard letter was in distribution for only three days before Mr. Hall abandoned its use and told the permittees to disregard it. Neither during nor after those three days was Ms. Collins refused the right to purchase alcohol—or denied any other tangible right—as a consequence of her inclusion on the habitual drunkard list. She suffered no injury other than damage to reputation. In *Constantineau*, by contrast, the plaintiff had been unable to purchase alcohol in the town where she lived since the chief of police had posted the notice.[5] *Constantineau v. Grager*, 302 F.Supp. 861, 862 (1969). Ms. Collins has not presented evidence from which a trier of fact could find a deprivation of a liberty interest.

■ The record presents several issues the parties describe as disputed facts, including: whether Ms. Collins is a habitual drunkard, chronic alcoholic or alcoholic;[6] whether Ms. Collins was arrested for an alcoholic related offense more than once; whether the list in Mr. Caruso's letter was a restatement of public record; and whether Ms. Collins's reputation was injured as a result of inclusion on the habitual drunkard list. The mere existence of disputed facts does not preclude summary judgment; only disputes that could affect the suit's outcome under the governing law preclude summary judgment. *National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 264–265 (7th Cir. 1996) (citations omitted). None of the remaining issues are material to the due process analysis.

The court neither belittles the gravity of the injury that Ms. Collins's reputation may have suffered nor suggests that no harm occurred, but the inquiry for a federal district court is whether she suffered a depriva-

---

5. Moreover, the case came before the court on the issue of injunctive relief as the plaintiff attempted to obtain actual relief from the tangible harm that she was suffering; the statute was being enforced against her.

6. The parties devote several paragraphs to this issue, with the defendants contending that post-letter medical records prove alcoholism. While making no effort to resolve the parties' disagree-

ment, the court doubts this factual dispute has any significance under any view of the case. The statute prohibits providing alcoholic beverages to one the provider knows to be a habitual drunkard. An alcoholic may or may not be a habitual drunkard, and in any event, a subsequent discovery that a patron is an alcoholic would not affect the provider's liability under the statute.

tion of a liberty interest protected by the federal constitution. She did not. The defendants' motions for summary judgment on the plaintiff's § 1983 claim for violation of procedural due process is granted. In light of this ruling, the court need not address the defenses to the § 1983 action raised by the defendants.

■ Ms. Collins also asks the court to declare the habitual drunkard statute unconstitutional on its face because it is vague. Because she has no claim under § 1983, her request for declaratory relief itself must provide the court jurisdiction if her case is to survive. To invoke federal jurisdiction, a plaintiff must establish standing, which requires the existence of a case or controversy. U.S. Const. art. III, § 2; *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990).

> To set forth the requisite Article III case or controversy, the litigant must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. A litigant does not have to await the consummation of threatened injury to obtain preventative relief. If the injury is certainly impending, that is enough. The injury, however, cannot be abstract. It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct. The injury or threat of injury must be both real and immediate, not conjectural or hypothetical. Of course, the difference between an abstract question and a case or controversy is one of degree ... and is not discernible by any precise test. In addition, the litigant must satisfy the causation and redressibility prongs of the Art. III minima by showing that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision. A litigant must clearly and specifically set forth these Article III standing requirements with sufficient facts, because a federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing.

*Schmidling v. City of Chicago*, 1 F.3d 494 (7th Cir.1993) (citations and internal quotations omitted). As discussed above, Ms. Collins has suffered no actual injury, so the court must determine whether Ms. Collins has alleged a sufficiently immediate threat of injury. *Schmidling v. City of Chicago*, 1 F.3d 494, 498 (7th Cir.), *cert. denied,* 510 U.S. 994, 114 S.Ct. 555, 126 L.Ed.2d 456 (1993).

In *Hays v. City of Urbana*, 104 F.3d 102 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 2433, 138 L.Ed.2d 195 (1997), real estate owners brought a suit under § 1983 seeking a declaration that a portion of a federal statute preempted a city ordinance which mandated that landlords treat government vouchers the same as cash. The district court held that the plaintiffs lacked standing under Article III because the prosecutor had no immediate plan to enforce the law. In reaching its conclusion, the district court relied on *Schmidling v. City of Chicago*, in which the Seventh Circuit stated that "[t]o establish standing, the plaintiffs must also show that the City has threatened them with immediate prosecution under the current [ ] ordinance." *Schmidling,* 1 F.3d at 499. Correcting the district court, the Seventh Circuit in *Hays* explained that the quoted passage from *Schmidling* was mere dictum.

The court of appeals clarified the role that a statute's enforcement—whether actual or threatened—plays in analyzing whether a plaintiff has standing to maintain an action challenging that statute: "a person who must comply with a law or face sanctions has standing to challenge its application to him, even if the threat of prosecution is not immediate—indeed, even if the law is not yet in effect." *Hays,* 104 F.3d at 102. The plaintiffs' compliance was necessitated by the city attorney's indication that enforcement of the statute was possible—though not imminent—upon his finding evidence of a violation. Accordingly, the court found concrete injury in the plaintiffs' allegation that compliance with the law would be costly.

■ Thus, *Hays* teaches that a party who brings a lawsuit before the statute actually is enforced may have standing. Although standing may be found where a challenged

statute is not being enforced, this does not dispense with the fundamental requirement for standing, that is, the existence of "concrete injury, redressable by success in the litigation." *Id.* at 103. The plaintiff must present something that is at stake, whether that be the cost of compliance with the statute or the risk of prosecution for non-compliance. *Hays,* 104 F.3d at 104. Ms. Collins presents an insufficient risk of loss.

█ The record contains no indication that the habitual drunkard statute will be enforced by anyone against anyone at anytime sooner, later or ever. Mr. Caruso has left Starke County's employ and Ms. Collins points to no evidence suggesting that Mr. Hall has plans to reinstate the program he abandoned after three days. For purposes of deciding this motion, however, the court presumes that since the statute is on the books, it will be enforced in Starke County at some time. But the possibility of enforcement does not require Ms. Collins to engage in, or refrain from, any activity; the law's existence does not cause her to alter her conduct in any way.

A permittee challenging the habitual drunkard statute might suffer injury by the statute's mere existence. Ind.Code 7.1–2–3–9 gives the Indiana Alcoholic Beverage Commission discretionary authority to "issue, deny, suspend, revoke, or not renew all permits," so a permittee could incur substantial costs simply as a result of complying with the habitual drunkard law; the law's mere existence might cause a cautious permittee to screen all purchasers of alcohol somehow to determine whether selling to that person might invoke liability under Ind.Code 7.1–2–3–9 for violating the habitual drunkard statute. A permittee in that context would have to choose between complying with the law or facing a potential sanction, a risk of loss.

Ms. Collins faces no such choice. She cannot change the fact of her two previous arrests—incidents that may or may not be sufficient for a permittee to find that she is a habitual drunkard under the statute. The only injury she stands to suffer is the denial of the purchase of alcohol from an alcoholic beverage permittee, harm that will not occur, if ever, until a permittee seeks to enforce the

statute against her. Until then, there is no risk of loss, and the choice between compliance with the law or facing sanctions is not hers. Weighing all factors, Ms. Collins' claim is more of an abstract question than a case or controversy; resolution of the claim would amount to an advisory opinion regarding the constitutionality of the habitual drunkard statute.

Ms. Collins has no standing to assert her claim for declaratory relief that the habitual drunkard statute is unconstitutionally vague, so the court has no jurisdiction over that claim, and the court need not address the merits of the portions of the summary judgment briefs dealing with those issues.

█ Ms. Collins asserts a defamation claim under Indiana law. A strong presumption favors relinquishing jurisdiction over state law claims when the federal claims no longer exist. *Van Harken v. City of Chicago,* 103 F.3d 1346, 1354 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 1846, 137 L.Ed.2d 1049 (1997). Ascertaining and applying Indiana law of defamation, along with its privileges, exceptions and immunities, to the facts before the court is hardly "within [the] 'no brainer' exception to the duty to relinquish federal jurisdiction over the supplemental claim when the main claim drops out before trial." *Id.* When such issues of Indiana law are raised between Indiana citizens, Indiana courts should be allowed to address them. The court does not find departure from the presumption of relinquishing jurisdiction over the state law claims warranted here, *id.,* and relinquishes jurisdiction over Ms. Collins's state law defamation claim.

For the foregoing reasons, the court DENIES the plaintiff's motion for leave to file a third amended complaint (filed November 25, 1997 (docket # 61)); GRANTS defendant Hall's motion for summary judgment (filed October 20, 1997 (docket # 50)); GRANTS defendant Caruso's motion for summary judgment (filed October 20, 1997 (docket # 53)); DISMISSES the plaintiff's remaining state law defamation claim; and DIRECTS

the clerk to enter judgment in favor of the defendants.

SO ORDERED.